600 F.2d 226
 KYLE ENGINEERING COMPANY, a California Corporation, John E.
Kyle, Sr., David Kyle and Georgia Mae Kyle,
Plaintiffs-Appellants,
v.
Thomas S. KLEPPE, Administrator of the Small Business
Administration, Defendant-Appellee.
KYLE ENGINEERING COMPANY, a California Corporation, John E.
Kyle, Sr., David Kyle and Georgia Mae Kyle,
Plaintiffs-Appellees,
v.
Thomas S. KLEPPE, Administrator of the Small Business
Administration, Defendant-Appellant.
 Nos. 77-3071, 77-3100.
 United States Court of Appeals,
Ninth Circuit.
 July 3, 1979.
 
 James D. Murray (argued), Pfeiffer & Murray, Los Angeles, Cal., for Kyle Engineering, et al.
 Robert S. Greenspan, Atty. (argued), U. S. Dept. of Justice, Washington, D. C., for Thomas S. Kleppe.
 Appeal from the United States District Court, Central District of California.
 Before GOODWIN and TANG, Circuit Judges, and EAST*, District Judge.
 TANG, Circuit Judge.
 
 
 1
 Kyle Engineering Co. (Kyle) appeals the district court's order dismissing its suit against the administrator of the Small Business Administration (SBA) for damages arising from the SBA's allegedly faulty performance of its contract with Kyle. The administrator cross appeals from the district court's dismissal of his counterclaims for the amounts due from Kyle on notes guaranteed by the SBA. We reverse the district court's orders and remand for further proceedings.
 
 
 2
 Kyle is a California corporation, a small business concern as defined in 15 U.S.C. § 632 (Supp. IV 1974), and a minority business.[1] In November 1968 Kyle borrowed $80,000.00 from a California bank. The loan was partially guaranteed by the SBA. To secure payment of the note, Kyle granted a security interest to the bank in almost all of its present and future assets, and the individual plaintiffs personally guaranteed the note.
 
 
 3
 In April and October 1970 Kyle entered into two subcontracts with the SBA to supply the U. S. Navy with cabinets and other equipment. Under 15 U.S.C. § 637(a)(2), the SBA is authorized to enter into procurement contracts with other government agencies, and then subcontract with small business concerns the performance of the procurement contracts. This program is known as the § 8(a) or set-aside program. See 13 C.F.R. § 124.8-1. Each subcontract contained a provision that incorporated by reference, as part of the contract, portions of the Armed Service Procurement Regulations (ASPR). The ASPR describe the rights and remedies available to the contractor in the event of various specified contractual disputes. The Kyle-SBA subcontracts incorporated, among others, ASPR provisions pertaining to new material, price reductions, government delay, and termination for the convenience of the Government. They also included the standard "disputes clause," which provided that all disputes concerning a question of fact arising under the contract should be decided by the contractor officer, with a right of appeal to the Secretary.
 
 
 4
 Kyle apparently had difficulty performing these contracts. Kyle claimed that these difficulties were due to the SBA's lack of cooperation.
 
 
 5
 In July 1970 Kyle borrowed an additional $60,000.00 from the same bank. In October 1971, the notes, guaranties and security interest held by the bank were assigned to the SBA. Kyle failed to make the payments as required, and on November 24, 1971, the SBA foreclosed on the notes and sold Kyle's plant, work in progress, materials and tools. After the sale, a balance of $36,477.16 remained outstanding on the first note, and the entire $60,000.00 remained on the second.
 
 
 6
 On November 29, 1971, after Kyle had allegedly failed to meet its delivery schedule, the SBA terminated Kyle's § 8(a) contracts on the basis of Kyle's default.
 
 
 7
 Two years later, Kyle sued the SBA in district court. In its first amended complaint,[2] Kyle claimed that the SBA had not performed as required under the § 8(a) contracts, specifically alleging, among other things, that the SBA set prices lower than the parties had intended, that the SBA had unreasonably delayed in furnishing materials to Kyle, and that the drawings furnished by the SBA were either illegible or contained improper changes. Kyle prayed for reformation of the contract, declaratory relief and damages.
 
 
 8
 In its answer, the SBA contended that Kyle's complaint should be dismissed for its failure to exhaust administrative remedies. The SBA also counterclaimed for the $96,477.16 that it claimed Kyle owed it as a result of Kyle's default on the two promissory notes guaranteed by the SBA. In its reply, Kyle raised as affirmative defenses the SBA's alleged failure to comply with the requirements of the California Commercial Code for the sale of collateral and the SBA's alleged interference with Kyle's performance of the § 8(a) contracts.
 
 
 9
 After discovery and just prior to trial, the district court entered an order dismissing the complaint because of Kyle's failure to exhaust the disputes procedure contained in the contract. In the same order, without explanation, it dismissed the SBA's counterclaims.[3] Each party appeals the dismissal of its claims.
 
 
 10
 * The Kyle Appeal
 
 
 11
 Kyle raises four issues on appeal. It contends that the district court erred (1) in denying its leave to file a second amended complaint; (2) in vacating the notice of the deposition of the Administrator; (3) in ordering that all discovery be completed by November 29, 1974; and (4) in dismissing the action on the basis of its alleged failure to exhaust administrative remedies. It is the issue of exhaustion that is the central issue on appeal and we discuss this issue first.
 
 A. Exhaustion
 
 12
 As noted, the Kyle-SBA contract incorporated the standard disputes clause, 32 C.F.R. 7.103-12:
 
 
 13
 (a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.
 
 
 14
 The United States Supreme Court has, on several occasions, expressly addressed the effect of a standard disputes clause on the ability of the contractor to seek relief in a district court without prior exhaustion of the administrative scheme described in the clause. See, e. g., Crown Coat Front Co. v. United States, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967), United States v. Utah Construction Co., 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). The cases make "clear that the contractor must seek the relief provided under the contract or be barred from any relief in the courts." Crown Coat Front Co., Inc., 386 U.S. at 512, 87 S.Ct. at 1182. The disputes clause
 
 
 15
 is a clear, unambiguous provision applicable at all times and binding on all parties to the contract. No court is justified in disregarding its letter or spirit. * * * It creates a mechanism whereby adjustment may be made and errors corrected on an administrative level, thereby permitting the Government to mitigate or avoid large damage claims that might otherwise be created. United States v. Blair, 321 U.S. 730, 735 (64 S.Ct. 820, 823, 88 L.Ed. 1039). This mechanism, moreover, is exclusive in nature. Solely through its operation may claims be made and adjudicated as to matters arising under the contract. * * * And in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.
 
 
 16
 Id., (quoting United States v. Holpuch Co., 328 U.S. 234, 239-40, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946). Even when the contractual scheme has been pursued and completed, the contractor is not entitled to a de novo determination of his claim for an "equitable adjustment." Instead, the district court's role is that of a reviewing court, and the court may refuse to follow the administrative determination only if it is arbitrary or capricious, or unsupported by substantial evidence. Id. 386 U.S. at 513, 87 S.Ct. 1177. See 41 U.S.C. § 321 (1970). Only when there is "clear evidence" that the administrative procedure is inadequate or unavailable is the exhaustion requirement excused. Holpuch, 328 U.S. at 240, 66 S.Ct. 1000.
 
 
 17
 It is important to note, however, that not all contractual disputes are subject to the exhaustion requirement; exhaustion is required only for disputes "arising under the contract." Utah Construction Co., 384 U.S. at 407, 86 S.Ct. 1545. The test to be employed in distinguishing claims within the disputes clause procedure from those outside that procedure "is whether the controversy is fully redressable under a provision of the contract other than the disputes clause itself." Bethlehem Steel Corp. v. Grace Line, Inc., 135 U.S.App.D.C. 81, 86, 416 F.2d 1096, 1101 (1969). In other words, a fact-dispute "arises under the contract" only when the disputed fact is capable of complete resolution by a procedure specified in the contract:In consequence, claims which are adjustable under contractual provisions must be submitted for the administrative determinations prescribed by the contract, while claims for breach of contract those not adjustable in that fashion may be litigated in a court of competent jurisdiction without previous resort to that procedure.
 
 
 18
 Id.
 
 
 19
 Because we are unable to determine from the record whether Kyle was required to exhaust the administrative procedure or whether Kyle did in fact exhaust, we find it necessary to remand the case to the district court for further proceedings. Although Kyle conclusorily alleged that it it had exhausted administrative remedies, it does not appear that Kyle actually pursued the administrative procedure detailed in the contract. Even if Kyle did not exhaust, the possibility remains that exhaustion was unnecessary, and it is unclear from the district's order of dismissal whether the court considered if exhaustion was required. Because of this uncertainty, we find it necessary to reverse the dismissal and remand to the district court. On remand the district court should consider, under the standards we have set forth, whether exhaustion was required because the claims raised by Kyle were redressable under specific provisions of the contract. If exhaustion was required, the district court should consider whether Kyle in fact exhausted the administrative procedures that were specified in the contract.[4]
 
 
 20
 We find it unnecessary to elaborate in great detail on Kyle's arguments that exhaustion was not required. Kyle argues at length that because Congress has conferred federal jurisdiction under 15 U.S.C. § 634(b) for suits against the SBA the exhaustion requirement is somehow excused. We fail to see how the mere existence of jurisdiction to sue a federal agency, without more, obviates the need to pursue the administrative scheme for which the parties have contracted.
 
 
 21
 In its reply brief, Kyle intricately argues that, because the contracts were administered by the Navy, the disputes clause is inapplicable to its squabble with the SBA. Because the contracts show that the SBA was the contracting officer, we are not persuaded by this argument. The district court, however, can consider the argument in determining whether the Kyle-SBA disputes arose under the contract.
 
 B. Kyle's Remaining Contentions
 
 22
 Because it is uncertain at this point whether the district court had jurisdiction over Kyle's action, it is premature for us to decide the merits of Kyle's remaining contentions. For the guidance of the court and parties on remand, we note that the district court does not appear to have committed reversible error.
 
 
 23
 Kyle first contends that the district court abused its discretion in denying Kyle leave to file a second amended complaint. We disagree. The new complaint stated additional jurisdictional theories, which, as we have shown, do not change the need for exhaustion.
 
 
 24
 Kyle also contends that the district court erred by vacating the notice of Kleppe's deposition that it had scheduled in California, and by setting a date for the end of discovery. We do not see how the district court abused the very wide discretion it is allowed in handling pretrial discovery. See Voegeli v. Lewis, 568 F.2d 89, 96 (8th Cir. 1977). Heads of government agencies are not normally subject to deposition, Peoples v. United States Department of Agriculture, 38 U.S.App.D.C. 291, 297, 427 F.2d 561, 567 (1970), and the district court's order directing Kleppe to answer interrogations in lieu of a deposition does not appear unreasonable. Nor can we say on the record before us that the court abused its discretion by setting a date for the end of discovery. Without knowing what the issues on remand will be, we are unable to determine that the time limit was unduly restrictive. Furthermore, Kyle does not show how it was prejudiced by the time limit, and it appears that some discovery in fact continued past the alleged cut-off date. Although the district court should guard against unnecessarily restricting the parties' access to discovery, See Transamerica Computer v. International Business Machines, 573 F.2d 646, 653 (9th Cir. 1978) it does not appear that the district court has abused its discretion. If the district court determines that it has jurisdiction of Kyle's suit, it is free to reopen the time for discovery.
 
 II
 SBA Counterclaims
 
 25
 It follows from what we have previously stated that the district court erred in dismissing the SBA's counterclaims concerning Kyle's default on the loans. It is evident that the loans made to Kyle did not "arise under the contract" and therefore the SBA's counterclaims were not subject to the exhaustion requirement. See Utah Construction Co., 384 U.S. at 403-12, 86 S.Ct. 1545. Because there is independent federal subject matter jurisdiction for the SBA's claims, they remain cognizable in federal court even if it becomes necessary to dismiss Kyle's complaint. See Switzer Brothers, Inc. v. Chicago Cardboard Co., 252 F.2d 407, 410 (7th Cir. 1958).[5]
 
 
 26
 Reversed and remanded.
 
 
 
 *
 Honorable William G. East, Senior District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 Members of the Kyle family, who are officers and shareholders of the corporation, are also parties. For the sake of convenience, only the corporation is referred to as plaintiff
 
 
 [2]
 Only a first amended complaint is contained in the record
 
 
 [3]
 The district court had previously ordered the case to be transferred to the Court of Claims. This court granted Kyle's petition for a writ of mandamus, and reversed the district court's transfer order. Kyle Engineering Co. v. United States District Court, No. 74-2044 (9th Cir., filed August 8, 1974)
 
 
 [4]
 Although we leave the determination of whether exhaustion is required to the district court, we note, on the record before us, that the disputes raised by Kyle appear to have been redressable under the contract. The issues raised by Kyle in its complaint, such as delay, changes, and termination, are covered by specific provisions in the contract. We also note that under 32 C.F.R. § 314, "(w)hen there is any doubt as to whether the issue in dispute is subject to the disputes procedure, a decision will be made pursuant to the Disputes Clause."
 
 
 [5]
 The fact that Kyle's contract claims may be dismissed for failure to exhaust should not preclude Kyle from contract-related issues in its defense of the counterclaim