**DART INDUSTRIES COMPANY, INC.,**
**Movant-Appellee,**

v.

**WESTWOOD CHEMICAL COMPANY,**
**INC., Respondent-Appellee.**

Nos. 77–3880, 78–1525.

United States Court of Appeals,
Ninth Circuit.

April 2, 1980.

Arthur I. Winard, New York City, Lon M. Mickelson, Los Angeles, Cal., on briefs, for movant-appellee.

John G. Wigmore, Lawler, Felix & Hall, Los Angeles, Cal., on briefs, for respondent-appellee.

Before WALLACE and ANDERSON, Circuit Judges, and PALMIERI,* District Judge.

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

PALMIERI, District Judge:

This is an appeal from the entry of an order quashing a subpoena duces tecum and denying any further discovery against appellee. The basic question presented on appeal is whether the district court abused its discretion by denying discovery.

The present proceeding is an outgrowth of a lawsuit filed by Westwood Chemical Company, Inc. (Westwood) against two of its former employees in the Southern District of New York. These employees allegedly conspired with Synthetic Products Company (Synthetic), a division of Dart Industries Company, Inc. (Dart), as well as Dart, to terminate a sales agency agreement that had been in force for some years between Westwood and Synthetic. In an effort to pursue discovery ancillary to the New York lawsuit, Westwood had a subpoena duces tecum issued from the Central District of California to one of Dart's officers directing him to appear for deposition upon written questions and to produce documents. Upon Dart's motion, the district court signed an order quashing the subpoena and denying any further discovery against Dart.

■ The district court's order barring discovery is to be reviewed under an "abuse of discretion" standard. In *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975), this court affirmed an order quashing a subpoena duces tecum and explained:

> We will reverse such an order to quash only for abuse of discretion .... Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge .... A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision.

We conclude that the district court did not abuse its discretion in barring discovery.

Dart was not a party to the New York lawsuit that arose from the termination of the sales agreement with Westwood because Dart and Westwood had entered into an agreement of general release on September 1, 1976. Under the release, Westwood received $700,000 from Dart in settlement of all claims under the parties' sales agency agreement, and as satisfaction for all claims Westwood may have had resulting from the termination of the sales agreement and the alleged conspiracy causing the termination.

■ The crucial issue in the controversy before us turns on the interpretation of the release agreement. The release agreement provided "that WESTWOOD releases and discharges DART INDUSTRIES INC. and its Synthetic Products Division of *any rights it has or may hereafter have* by reason of a conspiracy alleged by WESTWOOD ..." (emphasis added). Dart argues, and the district court agreed, that Westwood released any right to engage in discovery against Dart. Westwood contends that the agreement was designed only to release Dart from any possible claims against Dart as a defendant, not to bar discovery in an action against third parties. Although each side has sought to support its interpretation of the agreement's meaning by affidavits of attorneys who participated in its formulation, we have concluded that the meaning of the agreement is clear, requiring no amplification.

■ Our dissenting brother disagrees with our construction of the general release by saying "it contains much of the standard boiler plate to live up to this advance billing" [as a general release], adding that there is nothing in the agreement referring to Westwood's releasing its right of discovery from Dart. The answer to this is that Westwood gave up far more than its right of discovery against Dart. It gave up everything. It released Dart from "*any* rights [Westwood] has or *may hereafter have by reason of a conspiracy alleged* by Westwood." (emphasis added). Additionally, we can see no reason to denigrate the use of boiler plate or stereotype language where, as here, it was used appropriately. Such language has the value of frequent usage and general understanding. Far from derogating from its meaning, we be-

lieve it enhances its clarity beyond peradventure of doubt.

What our brother seems to be saying is that because the word "discovery" should have been used, and was not used, the agreement is ambiguous and operates only as a partial release. This conclusion is nothing short of rewriting the agreement and emasculating it. Equally unfounded is his statement that the major portion of the $700,000 payment to Westwood "merely represents money due under their sales agreement." This flies in the face of the agreement which states at the very outset:

> WESTWOOD CHEMICAL COMPANY, INC., having an address at 801 Second Avenue, New York, New York 10017, for and in consideration of the sum of SEVEN HUNDRED THOUSAND U. S. DOLLARS ($700,000.00) in hand paid by DART INDUSTRIES, INC., 8480 Beverly Boulevard, Los Angeles, California 90048, the receipt and sufficiency whereof is hereby acknowledged, . . . .

The dissent in this particular apparently relies on a choice between conflicting partisan affidavits submitted after the agreement was executed and the consideration paid, and when this controversy reached the district court. We believe that court reached a correct conclusion on "evidence which he rationally could have based that decision." *Premium Service Corp. v. Sperry & Hutchinson Co.*, supra at 229.

■ The dissent states that important policy considerations militate against interpreting the agreement as a general release. While discovery is a valuable right and should not be unnecessarily restricted, *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, .232 (9th Cir. 1979), the "necessary" restriction may be broader when a nonparty is the target of discovery. As one district court has noted, "[t]here appear to be quite strong considerations indicating that . . . discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Collins and Aikman Corp. v. J. P. Stevens & Co., Inc.*, 51 F.R.D. 219, 221 (D.S. C.1971). One author has stated that the

more appropriate nomenclature is "nonparty" discovery, not "third-party" discovery, as "the word nonparty serves as a constant reminder of the reasons for the limitations . . . that characterize 'third-party' discovery." Getman, R., "Federal 'Third-Party' Discovery in the Small Antitrust Case," 45 *Brooklyn L.Rev.* 311 (1979).

■ Although the strong policy in favor of liberal discovery is clear, *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1957), commentators have recognized that there is a potential for abuse in such a policy. One commentator has written:

> [T]he draftsmen of the federal rules held utopian notions of what might be gained from discovery.
>
> \* \* \* \* \* \*
>
> Designed with the hope of eliminating the so-called sporting theory of justice, discovery practice in many cases simply transfers the battlefield from the courtroom to the pretrial stage.
>
> \* \* \* \* \* \*
>
> A central justification for our exceedingly liberal discovery practice has been that the right to discover facts and information is kept entirely distinct from the right to use that information at trial.
>
> \* \* \* \* \* \*
>
> This theory gives insufficient weight to the rights of privacy of the person from whom discovery is sought and to the expense, delay, and potential for harassment and abuse that go with unrestricted discovery.
>
> \* \* \* . \* \* \*
>
> We need an increased consciousness of the excesses and an increased willingness—either assumed voluntarily or imposed through wider use of the discretionary powers of the court—to check them.

Stanley, J., "President's Page" (Message from the President of the American Bar Association), 62 *American Bar Association Journal* 1375 (November 1976). *See Also*, Pollack, M., "Discovery—Its Abuses and

Correction," 80 F.R.D. 219 (Remarks made at the Fifth Circuit Conference on April 26, 1978). The district judge did not abuse his discretion in not invoking the policy favoring liberal discovery to defeat an unambiguous agreement for which Dart paid substantial consideration.

While an exception was expressly set forth in the agreement with respect to the two former employees, none was stated with respect to Dart. We cannot accept Westwood's suggestion that it necessarily agreed only to refrain from suing Dart. Its agreement is far broader and it cannot be equated with a covenant not to sue[1], an undertaking that could readily have been expressed. If indeed the cooperation of Dart for the production of documents and the providing of testimonial evidence was a matter of importance to Westwood in the contemplated litigation against its ex-employees, such obligations could easily have been spelled out and defined.[2] Having bought its peace for $700,000, a very substantial consideration, Dart should be permitted, as the district court ruled, to be left alone—totally free of any obligations to Westwood.

In *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976), this court stated that agreements that avoid litigation and lessen the burden on courts are to be encouraged: "It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation."

(footnote omitted). *Accord, United States v. McInnes*, 556 F.2d 436 (9th Cir. 1977).[3] The dissent correctly points out that the policy in favor of settlement is not an absolute. In *Vuitton et Fils, S. A. v. J. Young Enterprises*, 609 F.2d 1335 (9th Cir. 1979), to which he analogizes the case before us, this court reversed the district court's entry of a final judgment based upon the parties' stipulated consent to an injunctive order. The parties to that stipulation expressly reserved defenses, *provided for continued discovery*, and did not address the other remedies prayed for in the complaint. This court, in an opinion by the author of the dissent here, concluded that the continuation of Vuitton's action was clearly contemplated by the parties. The broad language of the Dart/Westwood general release plainly terminates any further involvement by Dart.

While it is true that traditional rules of contract interpretation dictate that an ambiguous agreement be construed against its author[4]—in this case, Dart—the agreement before us does not contain ambiguous language. The agreement was entered into by two sophisticated business organizations represented by experienced counsel. Dart is correct in its assertion that Westwood could have negotiated the type of release it now asserts it did negotiate—a narrow release limited solely to the release of Dart from being named as a defendant in a conspiracy lawsuit. Nevertheless, Westwood did not do so.

1. For a discussion of the difference between a covenant not to sue and a general release, *see Dale Hilton, Inc. v. Triangle Publications, Inc.*, 198 F.Supp. 638, 639–40 (S.D.N.Y.1961). The dissent cites the Restatement (Second) of Contracts § 354, Comment c (Tent. Draft No. 13, March 1, 1978) in support of the conclusion that the release was in reality a covenant not to sue. The section states: "If a literal interpretation of a writing that purports to be a release would frustrate that purpose, the writing may be interpreted as a contract not to sue." The illustration given for the occasion when such a narrow interpretation is appropriate, explains that if a release of one of two joint debtors would release the other [who has paid no consideration], the release will be interpreted as a contract not to sue. In the case before us, no such drastic consequence will occur. Westwood explicitly reserved its rights against the

two former employees, and only these employees. A literal interpretation of the general release will not release them.

2. See our discussion of *Vuitton et Fils, S. A. v. J. Young Enterprises*, 609 F.2d 1335 (9th Cir. 1979), *infra*, at 650.

3. *See*, Lynch, E. "Settlement of Civil Cases: A View from the Bench," 5 *Litigation* 8 (1978) (in which the author notes: "Our pluralistic, complex and crowded society seems to breed lawsuits faster than pollution. Every lawyer and judge, and virtually everyone for that matter, is aware that our courts are backed up with all types of litigation.")

4. 4 S. Williston, Contracts § 621 (1961 & Supp. 1979).

The trial judge did not abuse his discretion when he quashed the subpoena duces tecum.

Westwood's motion under F.R.C.P. 60(b)(1), filed subsequent to the district court's order which we have discussed, and seeking to be relieved of that order, is treated by us as a motion for remand of the case for its consideration, and we decline to remand. *Smith v. Lujan*, 588 F.2d 1304, 1307 (9th Cir. 1979); *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 869 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976).

The order of the district court is affirmed.

J. BLAINE ANDERSON, Circuit Judge (dissenting):

I am now thoroughly convinced that my concurrence in the opinion filed in this appeal on the 17th day of January, 1980, was ill-advised and mistaken. I withdraw my concurrence and dissent from that opinion and from the vote of my colleagues to deny the petition for rehearing. My reasons, which I should have expressed earlier, are now set forth.

The general rule is that discovery orders, such as the one denying further discovery in the present case, are reviewed under an "abuse of discretion" standard. However, this limited standard of review cannot afford any protection to a discovery order which is erroneous as a matter of law. *People of State of California ex rel. Younger v. Tahoe Regional Planning Agency*, 516 F.2d 215, 217 (9th Cir. 1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97. Since the district court's order in the present case was based solely on its legal conclusions on the meaning of the agreement, its action is freely reviewable on appeal. *Id.* Not only does a fair reading of the agreement[1] reveal that it could not have been intended as Westwood's release of its discovery rights against Dart, but also important policy considerations militate against such a result.

Accepting for the moment the characterization of the agreement as not containing any ambiguous language, the agreement is still not susceptible of the interpretation given to it by the majority. The agreement is entitled "General Release" and it contains much of the standard boiler plate to live up to this advance billing. There can be no doubt but that it releases Westwood's rights against Dart which arose from the alleged conspiracy between Dart and Westwood's former employees. The agreement also clearly states that: "It is understood that this release applies solely to DART INDUSTRIES, INC. and Synthetic Products and to no other party whatsoever." Nowhere in the agreement is there any reference made to Westwood giving up or releasing its right of discovery from Dart. Yet, this is how the majority reads the agreement.

Since the agreement contains absolutely no discussion of discovery, and the parties obviously attach totally different meanings to it, the only possible way to read the release of discovery rights into it is by considering it ambiguous so that other evidence may be considered in determining the intent of the parties. *See United States v. Haas & Haynie Corp.*, 577 F.2d 568, 572 (9th Cir. 1978).

At the time the agreement was entered into, it was made absolutely clear to Dart that Westwood intended to sue its former employees. The majority opinion points out: "an exception was expressly set forth in the agreement with respect to the two former employees. . . ." As the alleged co-conspirator with these former employees, Dart was on notice that Westwood would seek discovery. Yet, Dart did not include a

---

1. Contrary to the majority assertion, this writer is not convinced that the agreement involved in the present case cannot be equated to a covenant not to sue. Where a purported release of one joint debtor (i. e., Dart) states that all rights against another joint debtor are reserved (i. e., the two former employees), then the writing may be interpreted as a contract not to sue, rather than as a release. Restatement (Second) of Contracts § 354, Comment c (Tent. Draft No. 13, March 1, 1978). And, as the case cited by the majority says, "where the court can possibly interpret the document as a covenant not to sue, it will do so." *Dale Hilton, Inc. v. Triangle Publications, Inc.*, 198 F.Supp. 638, 639 (S.D.N.Y.1961).

provision preventing discovery in the agreement. Since Dart either knew or had reason to know of Westwood's interpretation of the agreement, it should be given the meaning attributed to it by Westwood (that is, no release of discovery rights). *Haas & Haynie, supra,* 577 F.2d at 573.

Moreover, Dart was the principal author of the agreement, and as such it should be construed in favor of Westwood. *See* 4 Williston on Contracts, § 621 (3d ed. 1961). This is particularly true where Dart admits knowledge of the pending lawsuit against the former employees, yet does not include any language about discovery in the agreement.

Upon further study and reflection, I am satisfied that we cannot apply the abuse of discretion standard on review of this issue. The district court, by denying all discovery from Dart, has done violence to all previous interpretation and experience under the discovery rules. As the Supreme Court has noted, the discovery rules "are to be accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947). The basic philosophy underlying discovery is that "prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." Wright, Law of Federal Courts 354 (2d ed. 1970). Moreover, district courts "should guard against unnecessarily restricting the parties' access to discovery." *Kyle Engineering Co. v. Kleppe,* 600 F.2d 226, 232 (9th Cir. 1979). These considerations alone are a sufficient basis for reversing the district court's order. *See e. g., In re Westinghouse Elec. Corp., etc.,* 570 F.2d 899, 902 (10th Cir. 1978).

Furthermore, the majority opinion represents an unwarranted extension of the rule favoring the settlement of litigation.[2] It is undisputed that the agreement settled all claims which Westwood had against Dart. (It should be noted that the major portion of the $700,000 payment to Westwood merely represented money due under their sales agreement.) Had Westwood sought to pursue claims against Dart, then the rule favoring settlement should bar those claims. But here an entirely different situation arises. Westwood is attempting to sue its two former employees and seeks discovery from Dart in relation to that litigation. In reaching its settlement agreement with Westwood, Dart was not acting as a representative of any other party. At no time did Westwood or Dart contemplate the settlement of any claims which Westwood might have against any other party. Moreover, as to Westwood's two former employees, it was specifically recognized by the parties that Westwood would pursue its claim against them. Given these facts, the policy favoring settlement and the cases cited by the majority are irrelevant to this case, and should not be applied to terminate Westwood's discovery rights.

What the district court and the majority opinion have done is to stretch the settlement agreement so as to destroy or at least seriously affect Westwood's cause of action against nonparties (the two former employees) to the settlement agreement. It must be remembered that Westwood *expressly* reserved its right to sue these two former employees in the settlement agreement. Despite this express reservation and the fact that any policy in favor of settlement is irrelevant, the majority chooses to affirm the district court's order which was clearly erroneous as a matter of law.

Because I am convinced that the district court's order denying all further discovery by Westwood from Dart was contrary to the terms of the agreement, contrary to all general rules of contract interpretation, and

---

2. This policy in favor of settlement is far from absolute. In a recent decision this court stated that: "as a general rule a stipulation should not be construed as a stipulation that disposes of the entire case unless there is an unequivocal statement by the parties that it was so intended." *Vuitton Et Fils, S. A. v. J. Young Enter-* *prises, Inc.,* 609 F.2d 1335, 1337 (9th Cir. 1979). By analogy this same reasoning should apply here. This writer does not believe that the agreement not to sue should be construed as a release of discovery rights in the absence of an unequivocal statement by the parties that it was so intended.

contrary to the general policy in favor of discovery, I believe that the petition for rehearing should be granted and the order of the district court *reversed.*