**In re AMERICAN SWEETENERS, INC., Debtor.**

**Minnesota Corn Processors, Inc., Plaintiff,**

**v.**

**American Sweeteners, Inc., and PNC Bank, National Association, Defendants.**

**Minnesota Corn Processors, Inc., Plaintiff,**

**v.**

**American Sweeteners, Inc., and Raymond J. McCormick, Jr., Defendants.**

**Bkrtcy. No. 99–19471DWS. Adversary Nos. 99–0773, 99–1031.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 26, 2000.

Joseph B. Finlay, Jr., Philadelphia, PA, for Defendant & Counter–Claimant.

Myron Alvin Bloom, Philadelphia, PA, for Plaintiff & Counter–Defendant.

Warren T. Pratt, Philadelphia, PA, for Movant.

Dave P. Adams, Philadelphia, PA, United States Trustee.

### *OPINION*

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the Motion of Minnesota Corn Processors, Inc. ("MCP") for Partial Summary Judgment (the "Motion"). Some background on the genesis of the Motion is necessary to understand the relief granted herein. On February 8, 2000, I held a hearing in the above adversary cases on the Debtor's Motion to Compel Production of Documents and MCP's Motion for a Protective Order (the "Discovery Motions"). I have ruled on all but one of the issues raised therein, *see* Order dated March 10, 2000, finding that objection to the requested discovery not susceptible to resolution on the record made of the Discovery Motions. Specifically, MCP claimed that the Debtor was precluded from taking discovery of any facts relating to the period prior to December 30, 1998 ("Pre–1999 Conduct") on the grounds of relevance. The significance of the date relates to a Settlement Agreement and Mutual Release and First Modification of Settlement Agreement and Mutual Release (together, the "Release") entered

into between MCP and the Debtor which includes a mutual release of all claims of Debtor, Raymond J. McCormick Jr. ("McCormick") and R.J. McCormick III and MCP against each other arising prior to that date. Exhibit C to Motion. MCP's position that its Pre–1999 Conduct is not proper evidence in this case, if sustained, would narrow the factual issues for trial considerably. Accordingly, I directed MCP to file a motion that would put that question before the Court for resolution prior to trial. MCP filed the instant Motion.

 Debtor and McCormick (the "Defendants"), filing a joint submission, contend that the Motion is procedurally defective in seeking partial summary judgment when the claim to which the Motion relates, *i.e.,* Count 7 of the Counterclaim, will only be resolved in part by this Motion. The Defendants are correct that the Motion is one authorized by Fed.R.Civ.P. 56(d) (case not fully adjudicated on the motion) and as such, any order entered "in a strict sense is not a judgment at all." *Cohen v. Board of Trustees of the University of Medicine and Dentistry of New Jersey,* 867 F.2d 1455, 1463 (3d Cir.1989). Quoting from a leading commentator, the *Cohen* Court noted:

> The procedure prescribed in subdivision (d) is designed to be ancillary to a motion for summary judgment. However, unlike the last sentence in Rule 56(c), which provides an interlocutory judgment on a question of liability, Rule 56(d) does not authorize the entry of a judgment on part of a claim or the granting of partial relief. It simply empowers the court to withdraw some issues from the case and to specify those facts that really cannot be controverted.... Inasmuch as it narrows the scope of the trial, an order under Rule 56(d) has been compared to a pretrial order under Rule 16.

*Id.* (*quoting* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 2737, 316–318

(1998)). Thus, the Motion was fashioned to accomplish what I intended when I directed MCP to file it.

## DISCUSSION

 The Defendants state that the discovery being resisted is relevant to Count 7 of their Counterclaim. It reads as follows:

54. MCP has all relevant times, in bad faith and for ulterior motives, attempted to prevent ASI from reorganizing its business and from realizing the fair value thereof.

55. MCP has acted in bad faith and to the detriment of ASI's other creditors in order to further MCP's secret and paramount alternative objectives of either acquiring ASI's business itself for significantly less than the fair value thereof, or destroying ASI's business and thereby preventing any competitor or potential competitor of MCP from acquiring any interest therein.

56. On information and belief, MCP has determined, and has acted at all relevant times based on such determination, that ASI is "better off dead" than continuing to operate its business or consummating a plan to sell any part of its business to a competitor of MCP.

57. MCP's lead counsel has repeatedly referred to ASI's facility as a "dinosaur" and has also stated that ASI is "better off dead" than attempting to reorganize it business, when in fact MCP has determined that ASI's business is valuable and would be valuable in MCP's hands.

58. On information and belief, MCP has prepared studies and projections which show that ASI's business is valuable and would be valuable in MCP's hands.

59. On information and belief, MCP purchased PNC's interest in the Class 1 Claim in furtherance of its inequitable scheme to acquire or destroy ASI's business.

60. On information and belief, MCP has attempted to lure away ASI's customers in furtherance of its inequitable scheme to acquire or destroy ASI's business.

61. MCP's continuing tortuous misconduct is willful, malicious, and oppressive.

For these actions, the Defendants seek "disallowance or equitable subordination of MCP's claims in their entirety and for compensatory and punitive damages according to proof." Clearly the breadth of that relief sought does collide with the Release which provides, in pertinent part:

12. AmSweet, Raymond J. McCormick, Jr. and R.J. McCormick, III, hereby release and forever discharge MCP, along with its affiliates, successors, members, shareholders, partners, officers, directors, employees, attorneys, and agents, and each of such persons, entities, affiliates and successors, from any and all claims, demands, actions, or causes of action of every kind or nature, whether grounded in principles of tort, contract, implied contract, successor or transferee liability or other principles of law or principles of equity, whether presently known or unknown, suspected or unsuspected, including but not limited to any claims which were asserted or could have been asserted in the Consolidated Federal Court Litigation, all claims against MCP which could arise or be asserted based on the business relationship between MCP and AmSweet, in connection with the sale of product by MCP to AmSweet, or the provision of

transfer services by AmSweet to MCP, or the AmSweet Claims. Notwithstanding the foregoing, nothing herein shall release any future claims or obligations created by this Settlement Agreement.

Faced with the clarity of that document and not alleging any fraud in its execution that would be the only basis not to give effect to the Release, the Defendants concede that "ASI may not recover any damages from MCP based in part or whole on the conduct of MCP occurring on or before December 31, 1999." They omit, without discussion, any reference to McCormick in their concession yet it is clear that the release applies equally to him. While not a signatory to the original Settlement Agreement dated June 30, 1999, he is a signatory to the First Modification dated December 30, 1998 which states that "the June 30 Agreement shall remain in full force and effect and unmodified except as specifically provided." Exhibit D to Motion. To the extent there ever was a doubt, I find that Debtor and McCormick have released all claims against MCP for any conduct of MCP occurring on or before December 30, 1998. The Release is therefore a complete defense to any action on the claims released.[1] *Sorensen v. Coast–to–Coast Stores (Central Organization), Inc.*, 353 N.W.2d 666, 668 (Minn.Ct. App.1984).[2]

When the Motion was filed, the Official Committee of Creditors (the "Committee") was not a party to this litigation but has since been granted leave to intervene.[3] The Committee also filed a response to the Motion.[4] Unlike the Defendants, the Com-

---

1. Having so concluded, I need not address MCP's alternative argument that principles of *res judicata* bars litigation of pre–1999 conduct. For a discussion of the application this legal doctrine to the equitable subordination claim, *see* pages 279–80 infra.

2. The Release expressly provides that Minnesota law shall govern any disputes arising therefrom. Paragraph ¶11, Release, Exhibit C.

3. At the request of MCP, I have deferred ruling on the Motion until the Committee's

Answer to the Complaint was filed and it had the opportunity to supplement its Reply Memorandum based on receipt of that pleading. It has now done so.

The Committee has also filed an adversary case, No. 00–110, against MCP as well. The objective of that litigation is to set aside the Settlement Agreement as a fraudulent transfer under § 548, and void the liens granted to MCP thereunder.

4. In Adversary No. 00–110, MCP has pled the Committee's lack of standing and the bar of

mittee is apparently not willing to concede the validity of the Release. However, it proffers naught but argument and thus there is no basis to alter my finding concerning the binding effect of the Release in this adversary proceeding.

Notwithstanding this conclusion, there are still two justifications proffered for allowing discovery of Pre–1999 Conduct. First, the Defendants, joined by the Committee, contend that the Release does not bar consideration of Pre–1999 Conduct in connection with the request for equitable subordination of MCP's claim. Second, the Defendants argue that evidence of Pre–1999 Conduct may be relevant to MCP's post–1999 liability to the extent it bears on its motive and intent which may be admissible pursuant to Federal Rule of Evidence 404(b). I turn now to each of these contentions.

██ **Equitable Subordination.** The Defendants and Committee argue that since equitable subordination is a right conferred in bankruptcy and expressly codified in § 510(c),[5] it could not have been

the release as affirmative defenses. I have contemporaneously entered a pretrial order in this adversary case which sets a deadline for filing dispositive motions and motions in limine. Counsel will presumably be determining whether a motion is appropriate to address these legal issues.

5. Section 510(c) provides in pertinent part:
 Notwithstanding subsections (a) and (b) of this section, after notice and hearing, the court may—
 (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or another . . . ;
 (2) order that any lien securing such a subordinated claim be transferred to the estate.
 The commonly referenced test for the application of equitable subordination emanates from the decision of the Fifth Circuit in *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977). It holds that equitable subordination of a claim is warranted where the claimant has engaged in inequitable conduct which has resulted in injury to the creditors of the debtor or conferred an unfair advantage on the claimant.

embraced by the terms of the Release since it did not exist at that time. Moreover, they argue that the purpose of equitable subordination is not to bar a claim but rather to allow a court to reorder its priority under circumscribed circumstances. As such, the intended beneficiaries of a successful equitable subordination action would be the unsecured creditors who, they correctly note, did not agree to waive that potential bankruptcy benefit.

Neither the Defendants nor the Committee have provided any direct authority for their contention that an action seeking equitable subordination survives a release of all claims by the Debtor. The Committee, however, points to the fairly consistent case law in connection with waivers of the automatic stay that holds that prior to bankruptcy a debtor may not waive bankruptcy rights that inure to the benefit of unsecured creditors not a party to that waiver. While the question of whether prebankruptcy waivers of rights conferred by the Bankruptcy Code are ever enforceable is subject to some disagreement,[6]

6. While I do not have to reach this question here, I note that many courts have held that prepetition a debtor cannot waive the rights bestowed upon it by the Bankruptcy Code. *See e.g., In re Fallick*, 369 F.2d 899, 904 (2d Cir.1966) ("an advance agreement to waive the benefits of the [Bankruptcy] Act would be void."); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 651–52 n. 7 (9th Cir. BAP 1998) (citing numerous cases holding that prepetition waivers of bankruptcy benefits are unenforceable); *In re Heward Brothers*, 210 B.R. 475, 479 (Bankr.D.Idaho 1997) ("[A] prepetition agreement to waive a benefit of bankruptcy is void as against public policy."); *In re Pease*, 195 B.R. 431, 433 (Bankr.D.Neb.1996) (holding that a pre-bankruptcy debtor does not have the "capacity to waive rights bestowed by the Bankruptcy Code upon a debtor in possession, particularly where those rights are as fundamental as the automatic stay.").

In the Chapter 11 case, *Bank of America v. North LaSalle Street Limited Partnership (In re 203 North LaSalle Street Partnership)*, 246 B.R. 325 (Bankr.N.D.Ill.2000), which is famous for other reasons, the bankruptcy court considered whether senior status conferred under a contractual subordination agreement should be accorded to an artificial deficiency

even those courts that allow such waivers recognize that they may not be binding on objecting third parties. *See, e.g. In re South East Financial Associates, Inc.*, 212 B.R. 1003, 1004 (Bankr.M.D.Fla.1997) (prepetition waiver of bankruptcy benefits is not binding on third parties and will generally not be enforced where it adversely affects creditors); *In re Atrium High Point, Ltd. Partnership*, 189 B.R. 599, 607 (Bankr.M.D.N.C.1995) (a waiver by the debtor of automatic stay cannot bind third parties); *In re Cheeks*, 167 B.R. 817, 819 (Bankr.D.S.C.1994) ( while objections by other parties in interest to stay relief will be heard, court will give no weight to debtor's objection which is in conflict with and derogation of previous agreement).

 While none of these cases involve equitable subordination, the policy underpinnings for the decisions seem equally applicable. The beneficiaries of equitable subordination are creditors with a lower distributive priority. Indeed the test for equitable subordination is a showing that creditors have been injured by the inequitable conduct of the claimant. The creditors here were not a party to the Release. While the right to commence avoidance actions is statutorily limited to the trustee (or debtor-in-possession), *see, e.g.,* 11 U.S.C. §§ 544, 545, 547, 548, 549, 550, the right to commence an action for equitable subordination is not so constrained. That right would be seriously impaired if a debtor could prepetition unilaterally waive all § 510(c) actions in a subsequent bankruptcy proceeding.

 This dispute is made easier by the fact that the Release is silent concerning the waiver of the equitable subordination provisions of the Bankruptcy Code, and MCP, in support of its Motion, has produced no evidence to demonstrate that the parties intended that it should govern the priority of payment as between MCP and its other creditors.[7] *See Ed Schory &*

claim created by § 1111(b) and whether the senior creditor is entitled to vote the subordinated claims. In finding for the senior creditor as to the first question, the Court relied on § 510(a) of the Code which expressly provides for the enforceability of a subordination agreement in bankruptcy to the same extent it would be enforceable under applicable nonbankruptcy law. However, the senior creditor was not permitted to vote the subordinated creditor's claim notwithstanding the express provision in the subordination agreement that it could do so. The court reasoned:

First, the fact that North LaSalle agreed that the Bank could vote its claim as part of a subordination agreement does not provide a basis for disregarding § 1126(a). It is generally understood that prebankruptcy agreements do not override contrary provisions of the Bankruptcy Code. Thus, in *Klingman v. Levinson*, 831 F.2d 1292, 1296 n. 3 (7th Cir.1987), the court noted that the Bankruptcy Code generally provides for the discharge of an individual's debts, and that it would be contrary to public policy to allow a debtor "to contract away the right to a discharge." *See also Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 652 n. 7 (9th Cir. BAP 1998) (collecting decisions refusing to enforce prepetition waivers of "bankruptcy benefits" other than discharge). Indeed, since bankruptcy is designed to produce a system of reorganization and distribution different from what would obtain under nonbankruptcy law, it would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply.

Under the reasoning of this case, the Release would be binding to the extent it finally resolves all issues concerning liability but would not be effective to waive the provisions of § 510(c) since that provision is a Code granted right that cannot be contracted away.

7. In *In re County of Orange*, 219 B.R. 543 (Bankr.C.D.Cal.1997), the court considered whether the County had reserved its right to litigate equitable subordination in the Disclosure Statement when it stated that it disputed claims because of its "defenses, counterclaims and/or rights of setoff or recoupment with respect to such claims" and it reserved its "right to assert such rights, claims and defenses as appropriate." *Id.* at 558. The court concluded that equitable subordination was not embraced by the causes of action listed in the Disclosure Statement, all of which are in essence affirmative defenses that seek to alter the amount or challenge the validity of the underlying claim. The court contrasted the contours of an action for equitable subordination, stating:

*Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 390 (6th Cir. BAP 1998) (generally worded tort settlement agreement does not state or suggest any intention by either party to release bankruptcy rights and claims). Since MCP is asserting the bar of the Release, it is its burden to demonstrate its applicability to this litigation. Yet in reply to the Defendants and Committee, MCP merely denies that § 510(c) provides a right for a debtor to avoid a prepetition release. This conclusory rejoinder does nothing to carry its burden. Rather than develop a contrary argument, MCP focuses on the absence of any evidence of MCP's inequitable conduct to support the claim of equitable subordination and urges summary judgment be granted to it as a result. I find that the Defendants were not required to present such evidence in response to the Motion since all the Motion does is claim that as a matter of law, the Release bars any claims

> [E]quitable distribution ... is a legally distinct proceeding which seeks to reprioritize the order of allowed claims based on the equities of the case, rather than to allow or disallow the claim in the first instance. *Francis v. Holmes Land Co. (In re GEX Kentucky, Inc.)*, 100 B.R. 887, 891 (Bankr. N.D.Ohio 1988) ("Subordination of a claim and the objection to the claim are two separate and distinct procedures under the Bankruptcy Code with each having a different result."). *See also In re Slefco*, 107 B.R. at 640.
>
> The subordination of a claim, pursuant to 11 U.S.C. § 510(c), concerns the distribution and classification of an allowed claim based upon principles of equity....
>
> *In re GEX Kentucky, Inc.*, 100 B.R. at 891. Therefore, an inquiry as to whether equitable subordination applies does not focus upon the validity of the underlying debt at all. Rather, this fact is presumed, or otherwise admitted.

219 B.R. at 559. The Release at issue here is somewhat broader than the contractual language construed in Orange County. I cannot as easily conclude that the language (*i.e.*, actions and causes of action known or unknown, including without limitation, the matters subject to the extant litigation and any aspect of the business relationship between MCP and Debtor) by its terms could not apply to equitable subordination. However, given the essential distinction between claim allow-

based on Pre–1999 Conduct. The Motion does not challenge the facts that the Defendants have pled and that they argue give rise to equitable subordination but rather contends that these facts may not support a claim at this point because of the Release. If MCP believes that there are insufficient facts pled to support a claim of equitable subordination (as opposed to the Release barring consideration of same), it will have to bring a different motion. That issue is simply not before me. It may be that the discovery of Pre–1999 Conduct the Defendants seek to take does not relate to its claim of equitable subordination, but I cannot find that such claim is barred. Accordingly, MCP will have to resist the discovery on more focused relevance grounds, not by the broad invocation of its Release. To the extent MCP seeks a finding herein that the equitable subordination action is precluded by the Release, the request is denied.[8]

ance and claim prioritization, I also cannot conclude that equitable subordination is covered by the Release. This ambiguity in the document is another reason I cannot grant summary judgment for MCP on this issue.

8. In its supplemental reply memorandum, MCP argues that the doctrine of equitable subordination is being "pushed off its underpinning and into unchartered seas." It goes on to state, without legal authority:

> If allowed, it would set a precedent that any transaction, however old, is fair game for reconstructing. Section 510(c) was never intended to circumvent the time limits Congress set for undoing preferences (90 days) and fraudulent conveyances (one year).

I am unpersuaded by this argument. There is no support for the conclusion that the reach back periods of §§ 547 and 548 are to be applied to § 510. If Congress had intended to limit the remedy of equitable subordination to claims arising within a specified period prior to bankruptcy, it would have so provided. The concern expressed by MCP will go to the weight of the claim and will be addressed on the merits. If the conduct at issue is remote, presumably the creditor will argue that it could not have been unfair to existing creditors and a cause for subordination. The Committee is entitled to develop this theory through discovery. Whether it will yield a viable cause of action remains to be seen.

■ In the alternative, MCP contends that the doctrine of *res judicata* precludes the assertion of any claims based on pre–1999 conduct.[9] Since I find that the claims for equitable subordination survive the Release, I will address that contention in this context. Claim preclusion, also referred to as *res judicata*, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action. *Board of Trustees of Trucking Employees Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir.1992). As the Committee has intervened in this action and presses the claim for equitable subordination, one of the required elements, identity of parties, is absent. Thus, the res judicata defense is inapplicable to the Committee. *See Oberman v. Weiner (In re Crispo)*, 1997 WL 258482 *9 (Bankr.S.D.N.Y.1997) (where trustee, as fiduciary for all creditors, asserts claims that arise only under federal bankruptcy law or in his fiduciary capacity on behalf of creditors of the estate, he is not bound by a determination adverse to the debtor in a non-bankruptcy court).

■ It is also inapplicable to the Defendants as the substantial legal authority cited in the Committee's brief clearly establishes. MCP paints with a broad brush, stating general principles of claim preclusion without focusing on the precise claim at issue here. It is MCP's burden on summary judgment to prove the applicability of *res judicata* to bar the equitable subordination claim, and it has failed to do so. The doctrine of *res judicata* bars the litigation of all claims that were or could have been litigated. *Brown v. Felsen, supra.* As recognized by the Court in *Bankers Life and Casualty Co. v. Kirtley*, 338 F.2d 1006, 1011 (8th Cir.1964), the question is whether the subordination which is sought is the same cause of action upon which the previous judgment was based. Quoting the seminal opinion of the United States Supreme Court in *Pepper v. Litton*, 308 U.S. 295, 302–303, 60 S.Ct. 238, 84 L.Ed. 281 (1939), the Court found that the question of whether or not the judgment might be subordinated to the claims of other creditors upon equitable principles was not presented to the state court. It further stated:

> Subordination is not a recovery for wrongdoing, it involves the exercise of the equitable powers of the bankruptcy court in making distribution of the assets of the Debtor.

*Id.* (*citing In re Kansas City Journal–Post Co.*, 144 F.2d 791 (8th Cir.1944)). In *Oberman v. Weiner (In re Crispo)*, 1997 WL 258482, at *8 (Bankr.S.D.N.Y. May 13, 1997), the bankruptcy court set forth the general principles applicable here:

> Res judicata will not apply where "the initial forum did not have the power to

---

9. The Committee in its brief also discusses the doctrine of collateral estoppel which MCP properly does not assert. While the concepts may blur in some settings, they do not here where the judgment was entered without any findings that could form the basis of issue preclusion. "Whereas res judicata forecloses all which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 138 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

> Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of

action." *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940); 1B J. Moore, Federal Practice P 0.405[1] (2d ed.1974). Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.

> *Id.* at 131.

award the full measure of relief sought in the later litigation." *Burgos v. Hopkins*, 14 F.3d at 790 (discussing res judicata under New York law); see also RESTATEMENT (SECOND) OF JUDGMENTS S 26(1)(c) cmt. c (1982). Equitable subordination, as embodied in § 510(c) of the Bankruptcy Code, "is peculiar to bankruptcy law and an issue which can only be decided in a bankruptcy setting." *In re Poughkeepsie Hotel Associates Joint Venture*, 132 B.R. 287, 292 (Bankr.S.D.N.Y.1991); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir.1995) ("[e]quitable subordination is distinctly a power of federal bankruptcy courts, as courts of equity, to subordinate the claims of one creditor to those of others").

Based thereon, it concluded, as do I, that *res judicata* did not bar the assertion of equitable subordination. *See also Randa Coal Co. v. Virginia Iron Coal & Coke Co. (In re Randa Coal Co.)*, 128 B.R. 421, 426 (W.D.Va.1991) (claim for equitable subordination is core bankruptcy proceeding substantively based in federal bankruptcy law and distinct from a breach of contract).

**Relevance to Post–1999 Conduct.** The Defendants argue that evidence of Pre–1999 Conduct may be relevant to MCP's post–1999 liability to the extent it bears on its motive and intent. Fed.R.Evid. 404(b). They cite a string of cases that illustrate this rule of evidence but in none had the party proffering the evidence agreed to waive all claims to which the evidence related. Only one case, although also not on point, is helpful. In *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033 (2d Cir.1992), the Court affirmed the trial court's ruling that documents related to a period as to which claims were barred by the statute of limitations were nonetheless admissible. The Court reasoned that the statute of limitations was a defense not a rule of evidence and that as the documents were otherwise found relevant, they were properly admitted.

The question I must answer is whether that result should be any different when the party seeking to proffer the evidence has affirmatively agreed to waive any claims to which the evidence relates as opposed to the claims being barred by operation of law. MCP points to the decision of the Ninth Circuit in *Dart Industries Company, Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646 (9th Cir.1980), where the effect of a release on discovery was considered, albeit in somewhat different circumstances. The plaintiff Westwood Chemical Company had entered into a release agreement with Dart Industries Inc. and its Synthetic Products Division "of any rights it has or may hereafter have by reason of a conspiracy alleged by Westwood." *Id.* at 648. Westwood sought to take discovery of Dart in connection with a lawsuit against two of Westwood's former employees alleged to have conspired with Synthetic. It contended that the release was designed only to release Dart from any possible claims against it as a defendant and did not restrict its right to engage in discovery against Dart. The Court disagreed. Focusing on the words "any right" which it found clear and not necessitating an express reference to right of discovery, it concluded that "Dart gave up far more than its right of discovery against Dart. It gave up everything. It released Dart from any rights (Westwood) has or may hereafter have by reason of a conspiracy alleged by Westwood." *Id.* The Court was not impressed with the dissent's concern that the strong policy in favor of liberal discovery was impaired, finding that a restriction was more justifiable where a nonparty was the target.

The *Dart* Court was construing the scope of a release in the context of third party litigation involving the same transactions. As Westwood was not pursuing any action against Dart, the court concluded that the broad language of the parties' release which speaks of "rights," was intended to confer total repose for Dart, including protection from the contin-

ued litigation against other defendants. A different situation obtains here where discovery is being sought from a party in order to illuminate other non-released claims against it. Thus, I am unable to conclude that the Release constitutes the broad waiver of discovery rights being asserted by MCP here.

Having so concluded, it is still incumbent on the Defendants to prove the relevance of the documents they seek given MCP's objections on the grounds of relevance and undue burden. Their burden is heavy since the documents relate to conduct that is not at issue in this litigation. I am unable to conclude on this record that the documents being sought for the pre–1999 period relate to any of the purposes set forth in Rule 404(b). Generalized reference to that Rule is not sufficient to overcome a relevance objection asserted by MCP.[10]

In short, all I have concluded here is that the Release is effective to bar any claims relating to Pre–1999 Conduct but it is not effective to preclude the Defendants from discovery of facts arising during that period to the extent they are relevant to the remaining claims. Fed.R.Civ.P. 26(b) (incorporated in bankruptcy cases by Fed. R.Bankr.P. 7026). It is my hope that the parties will be able to agree on the production of the remaining documents consistent with this Memorandum Opinion. If they are not able to agree on the scope of the discovery of the pre–1999 documents, MCP may renew its Motion. An Order consistent with the foregoing Memorandum Opinion shall issue.

---

**10.** As Defendants acknowledge, even if such evidence is relevant, its ultimate admission at trial is not assured since I must also conclude that its probative value is substantially greater than considerations of undue delay, waste of time or needless presentation of cumulative evidence. Fed.R.Evid. 403.