**HADDEN et al. v. UNITED STATES.**

No. 49884.

United States Court of Claims.

Decided July 15, 1952.

John A. Hadden, pro se. (McKeehan, Merrick, Arter & Stewart, Peter Reed, Samuel K. Walzer, Arter, Hadden, Wykoff & Van Duzer and Richard C. Weiss, Cleveland, Ohio on the briefs).

Wm. A. Stern, II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen. (Carl

Eardley and John I. Heise, Jr., Washingon, D. C., on the briefs), for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

This action was brought by plaintiff as trustee in bankruptcy for Manufacturers Trading Corporation (also referred to as Manufacturers), a financing institution, for the sum of $63,000 which it claims by virtue of an assignment from Union Industries, Inc., of monies due under Contract NOrd 7426 between the defendant and Union Industries, Inc. Defendant filed a counterclaim for taxes in the amount of $71,367.68, plus interest, allegedly due from Manufacturers for the taxable year 1947. Plaintiff thereafter moved for summary judgment, here under consideration. Subsequently defendant filed a claim for set-off,[1] and four additional counterclaims. The parties have treated plaintiff's motion for summary judgment as extending to the additional counterclaims and set-off as well as to the original claim and counterclaim, and the issues have been briefed and argued on that basis. We will therefore consider each in turn.

### Plaintiff's Claim

Defendant has conceded liability on the claim set forth in plaintiff's petition, under Contract NOrd 7426, and plaintiff is therefore entitled to recover $63,000, subject to such set-offs or counterclaims as may hereafter be determined.

### Defendant's First Counterclaim

Subsequent to the filing of defendant's first counterclaim for taxes due from Manufacturers for the taxable year 1947, the Commissioner of Internal Revenue issued to Manufacturers a certificate of overassessment for that year. Defendant has therefore conceded it is not entitled to recovery on its first counterclaim.

### Defendant's Set-Off

The claim set forth in defendant's pleading entitled "set-off" is founded upon an alleged overpayment of $302,000. by defendant to Manufacturers under Contract NOrd 5923.

In April 1944, the Navy entered into Contract NOrd 5923 with the Canonsburg Steel and Iron Works (sometimes called Canonsburg) for the manufacture of anti-aircraft shells. Shortly thereafter Canonsburg was liquidated and all its assets transferred to Union Mining Co., the sole stockholder of Canonsburg. The name of Union Mining Co. was subsequently changed to Union Industries, Inc., herein referred to as Union, and Contract NOrd 5923 was amended by substituting Union as the contractor in the place of Canonsburg. The monies due or to become due under that contract were assigned to Manufacturers by Union, as a result of a factoring agreement between Union and Manufacturers entered into in June 1945.

Contract NOrd 5923 was terminated by the Navy effective August 16, 1945. After termination Union filed application under the Contract Settlement Act of 1944, 58 Stat. 649, 41 U.S.C.A. § 101 et seq., for partial advance payments on its termination claim. As a result of these applications, four partial advance payments totaling $302,000 were made on Union's termination claim between September 26, 1945, and January 24, 1946. Those payments were all made either directly to Manufacturers, as assignee, or to an agent of Manufacturers who turned the money over to Manufacturers.

Defendant alleges and plaintiff denies that the contractor (Union or one of its predecessors) had been unable to procure materials necessary for the performance of the contract, and that prior to the termination of the contract the Government had furnished such materials with the understanding that the contractor would reim-

1. Under the rules of this court, revised May 15, 1951, this pleading would properly be termed a counterclaim. Rule 17 28 U.S.C.A. For the sake of clarity in identification, however, we shall follow the terminology used by the parties, and continue to refer to it as defendant's "set-off".

burse the Government for their value, alleged to be $487,289.91.

Defendant alleges that at the time Union submitted its applications for partial advance payments on the termination claim Union knew that its liability to the defendant for the Government-furnished materials exceeded the amount due Union under its termination claim, and that Manufacturers knew or was chargeable with the same knowledge when it received the advance payments from the Government. Defendant further alleges that defendant's officers were unaware of the existence of the contractor's liability for the Government-furnished materials when they made the alleged overpayments, and that those overpayments were made by mistake.

In January 1947, defendant's contracting officer, apparently having discovered the alleged mistake, made a determination that even prior to the partial advance payments there had been a net liability of Union to the defendant of $253,801.64 on Contract NOrd 5923, and that all the advance payments by defendant to Manufacturers on that contract were erroneous overpayments.

In July 1950, Manufacturers was adjudicated a bankrupt. Defendant filed its Proof of Claim for the alleged $302,000 overpayments against Manufacturers in the United States District Court for the Northern District of Ohio. The referee in bankruptcy conducted a hearing thereon and disallowed defendant's claim. Upon review the referee's order of disallowance was affirmed by the district court and the Court of Appeals. United States v. Hadden, 6 Cir., 192 F.2d 327.

██ As its first defense to defendant's set-off plaintiff invokes the doctrine of *res judicata* and asserts that the judgment of the bankruptcy court, affirmed by the Court of Appeals, was a final adjudication upon the merits and precludes defendant from reopening the matter by way of set-off in the instant proceedings. Despite defendant's assertion at one point in its brief that it

it unnecessary to determine at this time whether the previous decision is *res judicata*, there can be no serious doubt as to the propriety of asserting such a defense on a motion for summary judgment. See Love v. United States, 104 F.Supp. 102, 122 Ct.Cl. ——.

Defendant has also asserted that the previous decision is not *res judicata* because the referee in bankruptcy had no jurisdiction to pass on the defendant's right to recover the alleged overpayments from plaintiff. According to defendant the referee in bankruptcy in the district court lacked jurisdiction because "issues involving the Contract Settlement Act were being litigated and [the Court of Claims] has the sole jurisdiction of such matters." Defendant has submitted nothing other than this bare assertion to support its position, perhaps in recognition of its precariousness.

██ Subject to qualifications and exceptions not here material, the Court of Claims has exclusive jurisdiction under the Contract Settlement Act of termination claims by a plaintiff contractor against the United States. It is quite clear, however, that the Court of Claims does not have jurisdiction under the Contract Settlement Act, or any other act, of claims brought by the United States as an original party plaintiff against a private contractor. Such jurisdiction has always been in the federal district courts. Of course, once the Court of Claims' jurisdiction has been invoked by a contractor as original party plaintiff the United States has the right to assert by way of counterclaim against the plaintiff contractor such claims as it may have arising out of terminated contracts. But the Contract Settlement Act in no way purports to destroy or limit the alternative right of the United States to institute an independent suit in the federal district courts upon a claim such as the one under discussion.[2]

██ If the United States were deprived of that right, as it would seem to be under

<hr/>

2. Indeed the Contract Settlement Act expressly *requires* that suit by the United States be brought in the federal district courts in some instances. See section 19(c), 58 Stat. 667, 41 U.S.C.A. § 119.

the defendant's contention, and limited to recovery on such claims only by counterclaim in the Court of Claims, a contractor whose liability on a terminated Government contract exceeded his credits thereon could escape his net liability by the simple expedient of refraining from invoking the jurisdiction of the Court of Claims. No such intention is manifest in the Contract Settlement Act, or in any other act of Congress, and we conclude that the district court had jurisdiction to determine the claim submitted to it by the Government in the bankruptcy proceedings.[3] Defendant's argument that the Court of Appeals' decision is not *res judicata* because that court had no jurisdiction must therefore be rejected.

In further response to the asserted defense of *res judicata* defendant relies upon a clause included in its Proof of Claim against the bankrupt filed in the bankruptcy proceedings. That clause reads as follows:

"That the filing of this claim is not to be construed as a waiver of the right of the United States, or of any agency or instrumentality thereof, to follow any property, or the proceeds thereof, into the hands of whomsoever the same may be, including the receiver or trustee in bankruptcy, or as a waiver of any other claim or right of action or set-off or of any other right whatsoever that the United States, or any agency or instrumentality thereof, has or may have against the bankrupt, the receiver, the trustee or any other person."

We are unable to give this provision the effect for which defendant contends. In the first place it is not the "filing of this claim" but the judgment thereon which is asserted as a bar to the set-off in the instant proceedings. Secondly, it is not a "waiver" by defendant which prevents it from reasserting its claim by way of set-off, but the fact that its claim has already been decided. And finally we cannot see how a claimant may submit its claim to a court otherwise having jurisdiction, and at the same time reserve a right to disregard that court's determination of the merits of the claim, in the event it decides against the claimant.

Defendant next contends, however, that the first action was against Manufacturers as assignee of Union, but that plaintiff's liability may also be predicated upon the ground that Manufacturers was the successor in interest to Union. To support this theory defendant has submitted by affidavit certain facts which it contends show that Manufacturers was engaged in a plot to "milk" Union of its assets, thereby rendering Union insolvent. These facts we shall set forth in connection with defendants' second counterclaim, but we believe that as far as the set-off is concerned, defendant again is precluded from asserting such facts by virtue of the former judgment.

It may be noted that although defendant has alleged in its second, third, fourth, and fifth counterclaims that Manufacturers is the successor in interest to Union, no such allegation is contained in the pleading entitled set-off. Even had such an allegation been made, however, defendant is estopped from asserting this ground of recovery with respect to the set-off.

---

3. As to whether the district court could determine a contractor's termination claims submitted by way of counterclaim in a proceeding instituted by the United States as plaintiff, see United States v. U. S. Fidelity Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (holding that sovereign immunity from suit on a counterclaim was not waived). See also United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888, Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190, and 3 Moore's Fed. Practice (2d ed.), par. 13.28–29.

The opinion of the Court of Appeals in the bankruptcy proceedings discloses that the Government, undoubtedly in recognition of this situation, sought merely an order to hold the amount of the claimed overpayments pending decision on the contractor's termination claim in the suit which had already been brought by the bankrupt in the Court of Claims, or in the alternative an order to return the overpayments to the United States without prejudice to the action of the Court of Claims.

■ Defendant had an opportunity to establish its successor in interest theory in the bankruptcy proceedings. Generally speaking, an adjudication of a cause of action by a court of competent jurisdiction serves as *res judicata* upon a subsequent suit on the same cause of action between the parties, not only as to the grounds actually asserted in the prior action, but as to all other grounds which might have been asserted. Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195.

> "The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898.

■ Defendant has given us no basis upon which to relieve it of the operation of this rule.[4] We must hold therefore that having failed to assert and prove in the bankruptcy proceedings that Manufacturers was the successor in interest to Union, defendant is estopped by the judgment therein from making such a claim in the instant action, insofar as recovery of the alleged overpayments from Manufacturers is concerned.

Plaintiff is therefore entitled to summary judgment on defendant's set-off. It is consequently unnecessary to discuss at this point plaintiff's second defense to defendant's set-off, in which plaintiff relies upon Section 8 (d) of Contract NOrd 7426. The substance of this defense, however, will appear in connection with defendant's second counterclaim.

## Second Counterclaim

Defendant's second counterclaim arises out of an agreement between defendant and Union in May 1947, in regard to the renegotiation indebtedness of Amsler-Morton Co. (arising out of Navy Contract NOD 6899), and Pennsylvania Industrial Engineers, Inc. (arising out of Navy Contract NOD 6898), both of which companies were divisions of Union. By this agreement, signed by the attorney for Union, it was stipulated that there would be paid to the defendant the principal sum of $18,847.02, plus interest, in liquidation of the renegotiation liability of Amsler-Morton, and Pennsylvania Industrial Engineers, Inc., under their respective contracts.

Defendant alleges that there is still owing from Union to defendant under this agreement the principal balance of $1,085.-15, plus interest. Defendant further alleges that Manufacturers is the successor in interest to Union and the divisions thereof, and therefore is also indebted to defendant for this amount. By its counterclaim defendant seeks to recover this amount from the sum admittedly due plaintiff under Contract NOrd 7426.

Plaintiff's first defense to this claim is based on Section 8 (d) of Contract NOrd 7426, which provided that

> "Payments to an assignee of any claim arising under this contract shall not be subject to reduction or set-off for any indebtedness of the Contractor to the United States arising independently of this contract."

Statutory authorization for this provision is found in the Assignment of Claims Act of 1940, 41 U.S.C.A. § 15:

4. In the affidavit of Lewis Lever, submitted by defendant, it is stated that evidence relating to knowledge by Manufacturers that the alleged overpayments were in fact made by mistake was discovered only after the hearing before the referee in bankruptcy. Such evidence perhaps would have persuaded the referee to hold that a right of recovery existed against the assignee in such a situation, but its relevance to defendant's succession in interest theory of liability is not readily apparent.

Even if relevant, however, it does not appear that such evidence was fraudulently suppressed during the bankruptcy proceedings, nor has any other factor tending to invalidate the previous judgment been shown by defendant.

If defendant seeks to invalidate the previous judgment on the ground of newly discovered evidence it would seem that the court which rendered the judgment would be the proper forum. At any rate such ground does not empower this court to disregard the previous judgment in bankruptcy.

"Any contract entered into by the War Department or the Navy Department may provide that payments to an assignee of any claim arising under such contract shall not be subject to reduction or set-off, and if it is so provided in such contract, such payments shall not be subject to reduction or set-off for any indebtedness of the assignor to the United States arising independently of such contract [54 Stat. 1030]."

Plaintiff points out that defendant's second counterclaim, based on Contracts NOD 6898 and 6899, arises independently of Contract NOrd 7426, upon which plaintiff's claim is based, and argues that the amounts owed to plaintiff as assignee under 7426 are therefore not subject to reduction or set-off of Union's indebtedness under 6898 and 6899.

■ In the ordinary situation this would be a valid defense. There can be little question, however, but that the purpose of the set-off clause in the Assignment of Claims Act, supra, was to ensure that an assignee within the terms of the act would not, *by virtue of the assignment*, become subject to set-off or reduction by reason of an indebtedness of the assignor to the Government. The claim asserted by the Government here has nothing to do with whether Manufacturers is or is not an assignee under Contract NOrd 7426.

■ We find nothing in the Assignment of Claims Act or in Section 8 (d) which destroys the Government's right of set-off of claims against Manufacturers itself arising independently and not by virtue of the assignment, even though Union —who in an unrelated transaction happens to be an assignor of Manufacturers—may also be liable to the Government for the same debt. To the extent that there is liability of the assignee arising from a relationship created independently of the assignment, as alleged in this case, neither Section 8 (d) nor the set-off clause in the Assignment of Claims Act is applicable. It is not merely "an indebtedness of the contractor" which is the subject of this counterclaim, but an indebtedness of Manufacturers as well, as successor in interest to the contractor.

There are circumstances in which a transferee of assets will be held liable as a successor in interest for obligations of the transferor, e. g., where the transfer operates as a fraud on the creditors of the transferor, or where the transaction amounts to a consolidation or merger, or where the transferee corporation is merely a continuation of the transferor corporation, or where the transaction is entered into fraudulently in order to escape liability for such debts. Fletcher, Private Corporations, § 7122 et seq. If defendant can show such circumstances the Assignment of Claim Act is no bar to recovery.

We are not presently concerned with the limitations, if any, which may attach to such liability,[5] but merely whether defendant has raised a genuine issue of material fact upon which such liability can be predicated. To show such liability defendant has stated by affidavit that in June of 1945 (about the time of the factoring agreement between Union and Manufacturers) practically all of the stock of Union was sold to the Globe Corporation, for $300,000. The transaction was negotiated through the direct participation of Alfred Sachs, who was a 40-percent stockholder of Globe, and president and controlling stockholder of Manufacturers. Within three days Union paid Globe $200,-000, ostensibly as a loan, for which Globe issued its debentures, and a month later, and additional "loan" of $100,000 was apparently made by Union to Globe. At the conclusion of these transactions, although Globe had received $300,000, it had a bank balance of only $180, and no other assets. Defendant asserts that the $300,000 found its way into the coffers of Manufacturers, and that the whole scheme was the result of a plot by Manufacturers to succeed to the entire interest of Union and Globe, and at the same time render Union and Globe insolvent.

---

5. See Fletcher, id., § 7129, which states that where the transfer operates as a fraud on creditors of the transferor, the transferee may be liable only to the extent of the assets transferred.

Plaintiff states in its affidavit that Manufacturers' only relationship with Union was that of factor, lending money to Union and taking assignments of various claims from Union as security, and that at no time did Manufacturers, by agreement or otherwise, assume the liabilities of Union.

Clearly there are issues of material fact raised by these conflicting affidavits, which would require the denial of plaintiff's motion for summary judgment. But plaintiff again advances the argument that the judgment in the bankruptcy proceedings is *res judicata* as to defendant's second counterclaim, under the rule that not only is a former judgment *res judicata* as to the cause of action there involved, but also as to all material facts there in issue. Southern Pacific Railroad v. United States, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355. Plaintiff relies upon the findings of fact of the referee in bankruptcy as precluding defendant from establishing here that Manufacturers is the successor in interest to Union. Chief among those findings is one to the effect that "The relation between the bankrupt [Manufacturers] and Union was at all times exclusively that of lender and borrower."

The immediate question then is whether that particular finding is *res judicata*, or operates as an estoppel, in a suit between the same parties on a different cause of action. This in turn depends on whether that finding was essential to the decision in the former action. If not, it is not binding here, even though the referee made an express finding thereon.

"* * * Frequently, it is also declared that in order that a judgment may operate as *res judicata* and be conclusive evidence of a fact sought to be established by it, it must appear that the fact was a material one in the former action, that the determination of facts which were not necessary to uphold the former judgment does not conclude the parties, and that even though a judgment in express terms professes to affirm a particular fact, yet if such fact was immaterial, and the controversy did not turn upon it, the judgment does not conclude the parties in reference to that fact [30 Am.Jur., Judgments, § 182].

"*o.* Facts not essential to the judgment. * * * Where the jury or the court makes findings of fact but the judgment is not dependent upon these findings, they are not conclusive between the parties in a subsequent action based upon a different cause of action * * * [Restatement, Judgments, § 68]."

See also Commissioner v. Sunnen, supra, 333 U.S. at pages 598 and 601, 68 S.Ct. 715, 92 L.Ed. 898, and Cromwell v. County of Sac, supra, 94 U.S. at page 353, 24 L.Ed. 195.

In order to determine whether the particular finding was essential to the holding in the former action, it is necessary to examine the legal principles by which the referee was guided, and which he considered controlling upon him.[6]

It becomes clear from a reading of both the referee's statement of applicable law, contained in his order on the Proof of Claim submitted by the Government, which is submitted as plaintiff's Exhibit 4 in the present action, and the opinion of the Court of Appeals affirming the referee, that the specific principle considered controlling in that case was contained in the Restatement of Restitution, § 14, set forth by the referee as follows:

"(2) An assignee of a nonnegotiable chose in action who, having paid value therefor, has received payment from the obligor is under no duty to make restitution although the obligor had a defense thereto, if the transferee made no misrepresentation and did not have notice of the defense."

This rule contains the general requirement that the assignee must have paid

6. It is the law as found and applied by the court in the former action which determines which facts were essential to its holding. The fact that a later court gives effect thereto by operation of *res judicata* is no expression of agreement or disagreement with the former determination of applicable law.

*value* for the nonnegotiable chose in action. Under the facts disclosed in the prior case, the value requirement was satisfied by the loan of money by Manufacturers to Union pursuant to the financing arrangement embodied in their factoring agreement some months prior to the alleged overpayments, which loan created a lender-borrower relationship. Since the finding of value was essential in the prior action, and since the payment of value necessarily created a lender-borrower relationship, the former decision would seem to be *res judicata* as to the creation of that relationship between Manufacturers and Union, *so far as that particular transaction was concerned.* But that relationship should not be construed to mean anything more than that a loan passed between the parties. And even assuming that under the rule of law applied by the referee and approved by the Court of Appeals, it was necessary to find that this relationship also existed at the time of the alleged overpayments with respect to the particular loan for which the assignment had been made, such a finding would not logically preclude the existence of other relationships between Manufacturers and Union arising out of other circumstances, or indeed even of other relationships in which the lender-borrower roles were reversed.

 This conclusion we emphasize to point out that the finding that the relationship between Manufacturers and Union was at all times *exclusively* that of lender-borrower was clearly broader than was necessary to the referee's holding. To that extent it is not binding upon the parties in this action, and is no bar to proof by the defendant of such further relationship between Union and Manufacturers as may have existed by reason of the alleged plot to strip Union of its assets, as long as such proof is not inconsistent with those facts which were essential to the referee's holding.

We do not see the necessity of examining in detail each of the referee's findings of fact at this stage of the proceedings, since many will not be in controversy and others will bear no relevancy to defendant's counterclaim; but it may be noted here that the findings of fact, express or implied, which were essential under the referee's statement of the law, would necessarily include findings to the effect that Manufacturers was an assignee of a nonnegotiable chose in action (the claim for monies under Contract NOrd 5923), it paid value therefor, it made no misrepresentation to the defendant to induce the alleged overpayments, and it had no notice that the Government had a defense (the claim for Government-furnished materials) under Contract NOrd 5923.

These facts may not be controverted in the instant action, but on the present state of the record we see nothing in these facts, or elsewhere in the referee's findings of fact, necessarily fatal to the cause of action set forth in defendant's second counterclaim. Plaintiff's motion for summary judgment thereon must be denied, and defendant given an opportunity to prove its claim, within the framework discussed herein.

### Defendant's Third Counterclaim

Defendant's third counterclaim is for $140,553, representing alleged excessive profits realized by Union for the fiscal year ended December 31, 1944, as a result of earnings of the Amsler-Morton Co., previously identified as a division of Union, under Contract NOD 8196. Defendant again alleges that plaintiff is the successor in interest to Union.

Plaintiff points out that defendant's counterclaim on Contract NOD 8196 arises independently of Contract NOrd 7426, upon which plaintiff's claim is based. Plaintiff contends that Section 8 (d) of Contract NOrd 7426 protects plaintiff from the assertion of claims arising independently of that contract.

This is substantially the same argument advanced by plaintiff in connection with defendant's second counterclaim. For the reasons set forth there plaintiff is not entitled to summary judgment on defendant's third counterclaim.

### Defendant's Fourth Counterclaim

As its fourth counterclaim defendant asserts that Union is liable to defendant for

income and excess profits taxes totaling $27,700.96 which were assessed against Canonsburg Steel and Iron Works for the fiscal year ended July 31, 1944. Defendant alleges that Canonsburg was merged with Union on January 31, 1944, through acquisition by Union of all of the capital stock of Canonsburg. Defendant further alleges that Canonsburg was liquidated as of the close of business August 31, 1944, and its assets and liabilities transferred to Union. Defendant finally alleges that Manufacturers is the successor in interest to Union and is therefore liable for such taxes.

██ Plaintiff states substantially that Contract NOrd 7426, upon which plaintiff's claim is based, was entered into as of November 1, 1944, three months after the last day of the fiscal year on which defendant's fourth counterclaim for taxes is based. Plaintiff contends that this shows that defendant's counterclaim arises independently of Contract NOrd 7426, within the meaning of Section 8 (d). While this is, of course, true, it is no defense to liability asserted against plaintiff as successor in interest to Union, and not as assignee, for reasons hitherto explained.

Plaintiff's motion for summary judgment must therefore be denied as to defendant's fourth counterclaim.

### Defendant's Fifth Counterclaim

Defendant's fifth and final counterclaim is for a total of $1,840,826.67, representing income and excess profits taxes allegedly due and owing to defendant. These taxes have been assessed as follows: $138,332.16 excess profits tax of Canonsburg for the period August 1, 1943, to January 31, 1944, assessed against both Canonsburg and Union; $1,695,769.88 excess profits tax for the period January 1, 1944, to May 5, 1944, assessed against Union as transferee of Amsler-Morton Co.; and $6,724.63 income tax for the period January 1, 1944, to May 5, 1944, assessed against Union as transferee of Amsler-Morton Co.

Plaintiff again makes a point of the fact that the fiscal periods for which defendant seeks taxes here ended prior to the entering into, and independently of, Contract NOrd 7426, upon which plaintiff's claim is based. Plaintiff's position is that even if Union is liable for these taxes there is no liability on the part of plaintiff, by reason of Section 8 (d) of Contract NOrd 7426. This argument we have encountered before, and must again reject it as grounds for summary judgment.

Plaintiff further points out, however, that during the periods involved in this counterclaim, both Canonsburg and Amsler-Morton were corporate entities separate and distinct from Union and not operating as divisions of Union, and argues that the sole basis of asserting a liability against Union for these taxes is the legal concept of transferee liability. All of this, plaintiff contends, is further evidence of the fact that the alleged indebtedness of Union asserted here arises independently of Contract NOrd 7426, within the meaning of Section 8 (d).

██ Plaintiff is quite correct in this latter contention, as far as it goes, but it does not entitle plaintiff to summary judgment, in view of defendant's allegation that plaintiff is the successor in interest to Union. If defendant can prove that Union was the transferee of Canonsburg and Amsler-Morton, and that subsequently Manufacturers or plaintiff became the transferee of Union, and that in each instance the tax liability asserted in defendant's fifth counterclaim passed to the respective transferee, then we do not believe that Section 8 (d) or the Assignment of Claims Act is applicable to that situation.

Certainly we cannot say at this point that plaintiff is entitled to summary judgment on defendant's fifth counterclaim, and its motion therefor is denied.

### Conclusion

In accordance with the foregoing opinion plaintiff's motion for summary judgment is granted as to the claim for $63,000 stated in plaintiff's petition; and also granted as to defendant's first counterclaim and set-off, which are dismissed.

Plaintiff's motion for summary judgment is denied with respect to defendant's second, third, fourth, and fifth counterclaims, which will be referred to a commissioner

of the court for such further proceedings as may be appropriate and consistent herewith.

Entry of final judgment on plaintiff's claim will be suspended pending determinaination of defendant's counterclaims.

It is so ordered.

HOWELL, MADDEN, WHITAKER and LITTLETON, JJ., concur.