**WESTWOOD CHEMICAL CO., INC., Plaintiff-Appellant,**

v.

**Richard W. KULICK, Arthur Fletcher, and Lenape Chemicals, Inc., Defendants,**

**Garry B. Curtiss and Joseph Drasner, Movants-Appellees.**

No. 80–3098.

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1981.

Decided Aug. 21, 1981.

As Amended September 10, 1981.

Rehearing and Rehearing En Banc Denied October 22, 1981.

Arthur I. Winard, New York City, Guren, Merritt, Sogg & Cohen, David A. Schaefer, Cleveland, Ohio, for plaintiff-appellant.

James C. Sennett, Jr., William T. Plesec, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Stuart & Zavin, New York City, for movants-appellees.

Before KENNEDY and JONES, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Westwood Chemical Company, Inc. (Westwood) appeals from an order of the District Court for the Northern District of Ohio quashing a subpoena duces tecum for discovery depositions of certain executives of Dart Industries, Inc. (Dart). The depositions were intended for use in an action pending in the federal court in New York in which Westwood seeks damages from two of its former employees, whom it accuses of conspiring with Dart to cause the termination of a profitable sales arrangement between Westwood and Dart.[1] The District Court held that in settling claims against Dart and its executives, including a claim for wrongful termination of the sales agreement, Westwood had released any right to take discovery depositions of Dart executives and to require the production of Dart's records. Dart also asserted in the District Court, and argues here, that a decision of the United States District Court for the Central District of California, since *aff'd sub nom. Dart Industries Company, Inc. v. Westwood Chemical Company, Inc.*, 649 F.2d 646 (9th Cir. 1980) (Anderson J., dissenting), is res judicata. In that litigation, involving interpretation of this same release, those courts held that Westwood had released its rights to all discovery from Dart and its executives and employees.

For twenty-two years prior to 1976, Westwood was the non-exclusive sales agent for certain products of Synthetic Products Company (Synthetic), a division of Dart. When Synthetic terminated the sales agreement as of August 16, 1976, Westwood gave notice that it would hold Synthetic responsible for certain commissions due. In addition, Westwood accused Synthetic of sabotage, ineptitude, price checking with competitors, conspiracy to destroy Westwood, breach of contract, and conspiring with Westwood's former employees, Richard Kulick and Arthur Fletcher. Settlement negotiations were concluded September 1, 1976 with an agreement entitled, "General Release." Under the terms of the release, Westwood received $700,000 from Dart in settlement of all claims of commissions and fees due under the parties' sales agreement and as satisfaction for all claims of Westwood against Dart, Synthetic, and the officers, agents and employees of either, resulting from the termination of the sales agreement and the conspiracy alleged to have caused the termination. The release stated that "It is understood that this release applies solely to DART INDUSTRIES, INC. and Synthetic Products and to no other party whatsoever," and again that "the consideration ... has been expressly provided for the purpose of releasing Dart Industries, Inc. and Synthetic Products Division and no one else." Dart acknowledges that this language was included to reserve Westwood's rights against its employees, Kulick and Fletcher, and that both parties expected that Westwood would bring suit against them.

Shortly thereafter Westwood indeed filed suit against Kulick and Fletcher in the Southern District of New York alleging, among other things, that they conspired with Synthetic, as well as Dart, to undermine Westwood's agreement with Synthetic, and to discourage various accounts from continuing to deal with Westwood. In pursuing discovery in that lawsuit, Westwood caused subpoenas duces tecum to be issued out of the Northern District of Ohio directing Synthetic's officers, appellees Garry B. Curtiss and Joseph Drasner, to appear as non-party witnesses for deposition upon written questions and to produce various documents. Curtiss and Drasner filed a motion to quash on July 25, 1977, on the ground that Westwood had released its

---

1. *Westwood Chemical Company, Inc. v. Richard W. Kulick, Arthur F. Fletcher and Lenape* Chemicals, Inc., No. 76 Civ. 4265 (HFW) (S.D. N.Y., filed Sept. 27, 1976).

right to engage in discovery against Dart, Synthetic, their officers and employees.

After the filing of the motion to quash the subpoena in the instant proceeding, but before the District Court's decision herein, the District Court for the Central District of California quashed a subpoena duces tecum to Dart's executive vice president, a California resident. Westwood appealed. Initially, the Ninth Circuit affirmed in an unanimous opinion. *Dart Industries Company, Inc. v. Westwood Chemical Company, Inc.,* 649 F.2d 646 (9th Cir. 1980). It held that "The district court's order barring discovery is to be reviewed under 'an abuse of discretion' standard," and that the District Court had not abused its discretion in quashing the subpoena. Thereafter, on April 2, 1980, the Ninth Circuit granted rehearing and withdrew this opinion and substituted one in which the majority affirmed the lower court, Judge Anderson, dissenting. In that opinion, the Ninth Circuit identified the crucial issue as the interpretation of the release agreement. The majority found that the District Court did not abuse its discretion in failing to invoke the policy favoring liberal discovery to defeat an unambiguous agreement for which Dart paid substantial consideration. It held that when Westwood gave up "any rights it has or may hereafter have by reason of a conspiracy alleged by Westwood" it gave up its right to involve Dart and Synthetic in discovery proceedings ancillary to its case against its own former employees.

It released Dart from "*any rights* [Westwood] had or *may hereafter have by reason of a conspiracy alleged by Westwood.*" Additionally, we can see no reason to denigrate the use of boiler plate or stereotype language where, as here, it was used appropriately. Such language has the value of frequent usage and general understanding. Far from derogating from its meaning, we believe it enhances its clarity beyond peradventure of doubt.

*Dart Industries Company, Inc. v. Westwood Chemical Company, Inc.,* 649 F.2d at 648 (emphasis original). In his dissent, Judge Anderson argued that the majority used the wrong standard to analyze the lower court's ruling. "Since the district court's order was based solely on its legal conclusions on the meaning of the agreement, its action is freely reviewable on appeal," and not limited to the standard of abuse of discretion. He pointed out that if the agreement is considered unambiguous, then it cannot be read to release Westwood's right to discovery against Dart since the agreement contains no discussion or even mention of discovery. In the absence of such discussion of discovery, the only way to read release of discovery rights into the document is by finding it ambiguous. If this is so, other evidence may be considered in determining the intent of the parties who attach different meanings to it. Judge Anderson goes on to note that although Dart knew that Westwood intended to pursue its suit against its own employees, Dart did not include a provision preventing discovery. Moreover, Dart was the principal author of the agreement, and as such it should be construed in favor of Westwood. The dissent further found the interpretation placed upon the agreement by the majority contrary to the broad and liberal policy to be accorded discovery.[2]

Meanwhile, back in Ohio, the District Court granted Dart's July 25, 1977 motion to quash on November 5, 1979, more than two years after it was made. It too, held that Westwood had released its right to take discovery against Dart, Synthetic and their officers. In its order, there is a reference to the California District Court's order quashing Westwood's subpoena and denying further discovery against Dart, although res judicata is not the basis of the decision. Westwood vigorously contends that the order of the District Court in California, as affirmed by the Ninth Circuit, is not res judicata and thus it is not bound by those courts' interpretation of the release agreement. It asserts that both the Central Dis-

---

**2.** On April 14, 1980, Westwood filed a new petition for rehearing en banc which was denied on May 14, 1980. The last action which

the Ninth Circuit took in this matter was its denial of Westwood's July 28, 1980 motion for order clarification.

trict of California and the Northern District of Ohio had concurrent jurisdiction of discovery proceedings. Different witnesses are involved in the different jurisdictions. The Ohio proceeding was initiated earlier and thus was not an attempt by Westwood to relitigate in a subsequent action a matter fully and finally resolved between the parties in a prior action. Finally, it argues, res judicata was not raised when the motion to quash the subpoena was filed and was not the basis of the Ohio District Court's decision.

■ Westwood's arguments are unpersuasive. The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. *See Federated Department Stores, Inc. v. Moitie,* —— U.S. ——, —— – ——, 101 S.Ct. 2424, 2427–2431, 69 L.Ed.2d 103 (1981); *James v. Gerber Products Co.,* 587 F.2d 324, 327–28 (6th Cir. 1978). A final judgment on a claim is res judicata and bars relitigation between the same parties or their privies on the same claim. *See Federated Department Stores, supra,* —— U.S. at ——, 101 S.Ct. at 2427; *Herendeen v. Champion International Corp.,* 525 F.2d 130, 133 (2d Cir. 1975). It bars relitigation on every issue actually litigated or which could have been raised with respect to that claim. *See James, supra,* 587 F.2d at 328. To constitute a bar, there must be an identity of the causes of action—that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action. *See Herendeen, supra,* 525 F.2d at 133–34; *State Mutual Life Assurance Co. of America v. Deer Creek Park,* 612 F.2d 259, 269 n.9 (6th Cir. 1979). These requirements are met here. Although different witnesses are involved in the California and Ohio proceedings, all are officers of Dart or Synthetic and it is that relationship to Dart which the California courts held precluded Westwood from taking their depositions. In each instance, it is the construction of the same "General Release" which denies Westwood the right to engage in discovery of Dart and Synthetic and their officers. It is not contended that the re-

lease can be interpreted to have one effect on discovery from some of Dart's officers and a different effect on others. Although the majority of the Ninth Circuit panel speaks of reviewing on an abuse of discretion standard, it is clear that it has construed the release and decided the case on its merits.

■ The fact that the instant proceeding was commenced first is immaterial. The California proceeding resulted in the earlier judgment. Where two actions involving the same issue are pending between the same parties, "irrespective of which action or proceeding was first brought, it is the first final judgment rendered in one of the courts which becomes conclusive in the other as res judicata." *Chicago, R. I. & P. R. Co. v. Schendel,* 270 U.S. 611, 616–617, 46 S.Ct. 420, 422–23, 70 L.Ed. 757 (1926). *See Helgesson v. Helgesson,* 196 F.Supp. 42 (D.Mass.1961), aff'd, 295 F.2d 37 (1st Cir. 1961). In the instant case, the California District Court decision was first, having been handed down some two years prior to the order which is the basis of this appeal.

■ Westwood next argues that having failed to plead res judicata formally as an affirmative defense in its motion to quash the subpoenas, Dart and Synthetic are now precluded from raising the doctrine. Res judicata is an affirmative defense ordinarily raised in the pleadings. Fed.R.Civ.P. 8(c). The purpose of such pleading is to give the opposing party notice of the plea and a chance to argue why its imposition would be inappropriate. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1970). Although there may have previously been some doubt, it is now clearly established that res judicata can also be raised by motion. *Hadden v. United States,* 105 F.Supp. 1010 (Ct.Cl.1952) (res judicata raised by plaintiff on motion for summary judgment); *Larter & Sons, Inc. v. Dinkler Hotels Co.,* 199 F.2d 854, 855 (5th Cir. 1952) (case disposed of upon a motion to dismiss raising res judicata); *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 37 S.Ct. 506, 61

L.Ed. 1148 (1917) (defendant's motion for affirmance to the Seventh Circuit based on res judicata was found to be timely and proper where same action had been pending in both the Sixth and Seventh Circuits and the Sixth Circuit was first to render a final judgment against plaintiff); *Bennett v. Commissioner*, 113 F.2d 837 (5th Cir. 1940) (timely motion for rehearing based on the res judicata effect of another judgment is proper if the earlier judgment did not become final until after the hearing of the second suit). Moreover, the instant case arose, as did the controversy in California, by way of a motion to quash a subpoena, a less formal mode of practice than the usual complaint, answer, etc., route. In his November 5, 1979 order, the District Judge recited that the matter before him had been submitted and determined upon motion papers which included

> (5) various and multiple submissions by the parties respecting filings of motions, memoranda, affidavits and briefs with the United States District Court for the Central District of California in Case No. 77–2643 R entitled "*Dart Industries, Inc. v. Westwood Chemical Company, Inc.*," [649 F.2d 646 (9th Cir.)] along with certain orders of Judge Real in respect thereto. . . .

Under the circumstances presented here we find that the issue of whether the California case is res judicata was properly before the District Court. We note that in *Bennett v. Commissioner, supra,* the Court was unwilling to ignore the plea of res judicata because petitioners did not plead and prove the judgment in the hearing before the Board, but instead raised it in their motion for rehearing.

> We think there is more of form than of substance in respondent's claim that petitioners may not avail of the plea of estoppel by judgment, because not pleaded and proved below. On such a record it would be a sticking in the bark of form for us to close our eyes to the admitted facts; that petitioners did obtain a judgment in their favor; that the judgment became final and was paid off and to the settled, indeed the admitted, effect of these facts,

merely because, instead of their being presented by plea and proof at the original hearing, they were presented by plea and proof in a motion for rehearing after the judgment had become final.

*Bennett, supra,* 113 F.2d at 839–40.

As in *Bennett*, it would be more form than substance if we were to find that Dart may not avail itself of the claim of res judicata even though the California case was clearly called to the District Court's attention before it rendered its decision. *See* 1B J. Moore's Federal Practice ¶ 0.405[1] (2d ed. 1980). Respondent cannot be heard to complain that it was unaware of the California action nor, having fully briefed and argued the issue on appeal, that it has been prejudiced thereby. *Diaz-Buxo v. Trias Monge,* 593 F.2d 153 (1st Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979). We conclude that the California Courts' decisions are res judicata.

At oral argument, Westwood contended that even if the Ninth Circuit's decision were res judicata, that decision need not be followed because of the overriding public policy favoring liberal discovery. This Circuit has recognized that "[n]either collateral estoppel nor res judicata is to be rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy or result in manifest injustice." *Tipler v. E. I. duPont de Nemours and Co.,* 443 F.2d 125, 128 (6th Cir. 1971); *United States v. LaFatch,* 565 F.2d 81, 83 (6th Cir. 1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978); *Bronson v. Board of Education,* 525 F.2d 344 (6th Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976).

Professor Moore states the rule as follows:

> Although, on the whole, the doctrines of res judicata and collateral estoppel are strictly applied, they have been occasionally rejected or qualified in cases in which an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party.

1B J. Moore Federal Practice ¶ 0.405[11] (2d ed. 1980) (footnotes omitted).

The fundamental function of the doctrine of res judicata is to prevent the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy. The doctrine's objective is to give finality to prior judgments and put an end to litigation. The cases are few in which the public policy underlying the doctrine of res judicata has been found to be outweighed by countervailing considerations.

In *Spilker v. Hankin*, 188 F.2d 35 (D.C. Cir.1951), an attorney sued a client to collect on five notes representing part of the attorney's fee resulting from representation of the client in a prior divorce action. In a prior action on another note, part of the same transaction, the client had unsuccessfully raised the defense of duress. When the client now raised a defense of misrepresentation, the trial court held that the judgment in the first case was conclusive of the issue of assent. The D.C. Circuit reversed, declaring that res judicata is a "technical formulation" of public policy which must bow to the overriding judicial policy that carefully scrutinizes fee contracts involving notes from client to attorney. Because of the fiduciary nature of the attorney and client relationship, the Court held that protection of the client is more important to the public than universal application of res judicata.

Paramount congressional policy has also been held to prevent application of res judicata. *See NLRB v. Denver Bldg. & Construction Trades Council*, 186 F.2d 326 (D.C. Cir.1950). In *Denver Bldg.*, a union, petitioning for review of the NLRB's findings of an unfair labor practice, contended that a prior attempt by the NLRB to obtain a preliminary injunction from the district court, which had been denied because the alleged unfair labor practice did not affect interstate commerce, was res judicata of that issue in the present proceeding. Although the D.C. Circuit found that the un-ion was not guilty of an unfair labor practice, the court rejected the res judicata effect of the prior decision on the basis that the action in the District Court for injunctive relief was not on the merits, but rather, a preliminary proceeding for interlocutory relief and could not, therefore, be res judicata in the proceeding before the NLRB which was both on the merits and for final adjudication. The Court further reasoned that even if the District Court adjudication contained the elements for an application of res judicata, "Where the application of the judicial doctrine *res judicata* would be inconsistent with the method devised by Congress the doctrine will not be enforced by the courts." In reversing the Court's finding of no unfair labor practice, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284, the Supreme Court agreed that the difference in the two actions prevented the district court adjudication from being res judicata in the NLRB proceeding.[3]

Similarly, the congressional policy of granting farmers the right to a mortgage moratorium written into the Bankruptcy Act during the depression was held sufficient in *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), to sustain a collateral attack on proceedings taken in a state foreclosure action after the filing of the mortgagor-farmer's petition under § 75 of the Bankruptcy Act. More recently in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court determined that the congressional policy of having federal bankruptcy courts determine the dischargeability of debts under §§ 17(a)(2) and (4) of the Bankruptcy Act, and of having only honest debts discharged, precludes a creditor from invoking res judicata and thus barring a Court from considering evidence extrinsic to the state court judgment and record.

The strong public policy against monopoly or illegal restraint of trade has been invoked to prevent patentees from using res judicata or collateral estoppel to foreclose

3. The Supreme Court did not comment on the D.C. Circuit's reasoning that, even if all the elements for an application of res judicata were present, congressional policy prevented its application.

the courts from exercising their discretion to withhold injunctive relief and thereby prevent misuse of the patent. *Mercoid Corp. v. Mid-Continent Investment Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944).

While those cases in which our Court has addressed the question of when res judicata should give way to countervailing reasons of public policy provide some guidance, none are similar in either factual circumstances or the public policy at issue in the instant case.

In *Tipler v. E. I. duPont de Nemours and Co.,* 443 F.2d 125, 129 (6th Cir. 1971), plaintiff filed a charge with the NLRB alleging that he had been fired because of his union activities, in violation of §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3). The NLRB found that plaintiff had been fired for cause and dismissed the claim. Plaintiff subsequently sought relief under Title VII alleging racial discrimination in employment conditions and a racially motivated discharge. This Court declined to apply the doctrine of res judicata, basing its decision on the important differences between the purposes and requirements of Title VII and those of the National Labor Relations Act. This Court specifically noted that certain racially discriminatory practices that are not forbidden by the NLRA may be invalid under Title VII and that, therefore, the NLRB did not adequately consider the factors involved in a Title VII violation. *See also Harrington v. Vandalia-Butler Board of Education,* 649 F.2d 434 (6th Cir. 1981).

Analogous to *Tipler* is *Shimman v. Frank,* 625 F.2d 80 (6th Cir. 1980), wherein this Court determined that the acquittal of a charge under 29 U.S.C. § 530 of deprivation of rights by violence, could not trigger collateral estoppel of proceedings brought under that statutes civil counterpart, 29 U.S.C. § 412, civil action for infringement of rights. The principal reason for its decision was "that the burden of proof in a criminal proceeding is far higher than that in a civil proceeding—beyond a reasonable doubt as opposed to a preponderance of the evidence." 625 F.2d at 89.

Res judicata in the context of school desegregation litigation was addressed in *Bronson v. Board of Education,* 525 F.2d 344 (6th Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1665, 48 L.Ed.2d 175 (1976), wherein we concluded that the strong public policy against perpetuating racial segregation in public schools does not necessarily preclude the application of res judicata and collateral estoppel to school desegregation cases. 525 F.2d at 349.

Finally, in *United States v. LaFatch,* 565 F.2d 81 (6th Cir. 1977), *cert. denied,* 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978), res judicata gave way to the overriding public policy of encouraging corporations to cooperate with F.B.I. investigations. La-Fatch was indicted on six counts of having extorted $50,000 from a subsidiary of the MM corporation. According to the evidence, a subsidiary of MM wished to sell securities of Realty National, an Ohio corporation, to the public. After the registration had been pending for eight months, LaFatch informed Realty National's president that he could arrange immediate approval of the sale for $50,000. Realty National's president then conferred with the Justice Department, and the F.B.I. was contacted. The government gave Realty National $50,000 which it paid to LaFatch in two equal installments under F.B.I. surveillance. The money was subsequently seized from LaFatch and remained in custody of the District Court. At the close of the government's proof, the first count of extortion was dismissed, and following deliberations, the jury found defendant not guilty on the remaining five counts. La-Fatch then brought a motion in the District Court asking for return of the $50,000. The United States opposed this motion and subsequently filed an action in the state court. The jury in that action awarded the government $15,000. The District Court refused to order the return of the $50,000 to the United States on the ground that the jury verdict precluded further consideration of any additional award. The District Court concluded that the judgment of the state court was res judicata as to the ownership of the money.

This Court, per Chief Judge Phillips, acknowledged the objectives of the res judicata doctrine, but found that application of that principle would result in manifest injustice and would violate overriding public policy.

> Solicitation of bribes or payoffs in public matters is manifestly contrary to the public interest. In these times of increasing white collar crime, private citizens should be encouraged to cooperate with law enforcement officers in thwarting attempts at bribery and extortion.

> \* \* \* \* \* \*

> The acquittal of LaFatch in the criminal proceedings does not necessarily mean that he is the rightful owner of the money. In the criminal proceedings the jury determined that the evidence was not sufficient to establish the guilt of La-Fatch beyond a reasonable doubt. The right to ownership of the money, on the other hand, need be established only by the preponderance of the evidence.

*LaFatch, supra*, 565 F.2d at 84–85.

The public policy at issue here, discovery to aid in securing "... the just, speedy and inexpensive determination of every action," Fed.R.Civ.P. 1, while clearly important does not rise to the overall importance to society which *Bronson* and *LaFatch* indicate is necessary to avoid the preclusive effect of judgments. Indeed, subsumed in the Ninth Circuit's decision is the determination that discovery is not of such importance to require a different construction of the "General Release."

We reach this decision even though we believe that the Ninth Circuit and the Ohio District Court's construction of the release agreement is erroneous. On the merits of the case we are aligned with Judge Anderson's dissent. As he there points out, if the agreement is unambiguous then the majority's interpretation is incorrect, since the agreement neither discusses nor mentions discovery. The right to depose an employee or officer of a company as a non-party witness to use against defendants in another suit is not a claim against that company. And if the agreement is ambiguous, an evidentiary hearing was required to determine the intent of the parties in view of the admission that Westwood retained its right to sue Kulick and Fletcher. It cannot be said that there is no material issue of fact as it is far from clear that Westwood intended to relinquish its discovery rights against Dart and Synthetic in its suit against Kulick and Fletcher. Despite our conclusion that the dissent is correct and that we would have decided the case accordingly, the rule of res judicata does not depend upon whether the judgment relied on was correct or not.

> The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*" *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946).

*Federated Department Stores, supra*, —— U.S. at ——, 101 S.Ct. at 2429.

We acknowledge that Westwood's case against Kulick and Fletcher will be handicapped by its inability to depose Dart and Synthetic's officers. But we do not find present here manifest injustice of the type necessary to except a case from application of res judicata. Westwood has had two opportunities to argue its position as to the construction of the release agreement.

We are not unmindful that the District Court for the Southern District of New York also has some interest in having the testimony of witnesses from Dart and Synthetic. That interest can adequately be protected by use of Rule 614, Fed.R.Evid., which permits the court on its own motion to call witnesses. One of the purposes of that rule is to assure that "the judge is not imprisoned within the case as made by the parties." Rule 614, Fed.R.Evid., Notes of Advisory Committee on Proposed Rules, Subdivision (a). Presumably the court may call a witness by deposition *de bene esse* as well as in person.

The public policy and manifest injustice to a party exceptions to applying the doctrine of res judicata have been recognized sparingly and only under the most urgent circumstances. We decline to invoke these exceptions to the principle of res judicata where, as in this case, the public policy appellant claims has already been considered and decided by a competent court having jurisdiction over the subject matter and the parties.

The judgment of the District Court is affirmed.