872 F.2d 1025
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HARLEM GLOBETROTTERS, INCORPORATED, Plaintiff-Appellee,
v.
HARLEM MAGICIANS, INCORPORATED, Lon Varnell, Varnell
Enterprises, Incorporated, Defendants,
International Broadcasting Corporation, Counter Defendant-Appellee,
Marques Haynes, Defendant-Appellant.
 No. 88-5506.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1989.
 
 Before MERRITT and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Marques Haynes appeals from the district court's order granting partial summary judgment in favor of plaintiff Harlem Globetrotters Inc.[1] (HGI) in this trademark infringement action. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 In late 1961, Abe Saperstein, founder and owner of the Harlem Globetrotters, filed a complaint alleging that Haynes had violated Saperstein's and the Harlem Globetrotters' registered trademarks, "Harlem Globetrotters" and "Magicians of Basketball" by promoting a basketball team known as the "Harlem Magicians." In 1964, the parties settled the litigation by entering a consent decree approved by the District Court for the Southern District of New York. The 1964 consent judgment permanently enjoins Haynes from, inter alia,
 
 
 3
 (1) employing, managing or promoting any basketball team using the words "Globetrotters," "Trotters" or "Harlem," alone or in combination with any other words; and
 
 
 4
 (2) using any uniform in connection with any basketball team owned or managed by Haynes, with pants bearing vertical stripes, shirts containing stars or the words "Original," "Harlem," "Globetrotters" or "Trotters."
 
 
 5
 Saperstein v. Haynes, No. 61-4640, slip op. at 2 (S.D.N.Y. Dec. 30, 1964) (order).
 
 
 6
 In 1979, Haynes filed charges with the National Labor Relations Board (NLRB) against HGI.[2] On September 17, 1980, HGI and Haynes executed a settlement and release agreement (1980 Release) disposing of the NLRB action. The 1980 Release does not address either HGI's trademark rights or the 1964 judgment.
 
 
 7
 Shortly after executing the 1980 Release, Haynes became owner of the "Harlem Wizards." In 1983, he formed another team known as the "Harlem Magicians." In 1987, Haynes was promoting "Marques Haynes's Harlem Magicians" in a series of performances in Tennessee. After becoming aware of the performances, HGI filed this lawsuit alleging, among other things, that Haynes's action violated the terms of the 1964 judgment resulting in trademark, trade name and service mark infringement under the Federal Trademark Act of 1946, as amended, 15 U.S.C. Sec. 1051 et seq. HGI sought to permanently enjoin Haynes from using the term "Harlem" or the term "Magicians" in connection with any basketball team and sought damages caused by Haynes's trademark infringements.
 
 
 8
 The district court granted HGI's motion for partial summary judgment finding the 1964 judgment valid and giving it res judicata effect. The district court concluded: (1) the 1980 Release, as a matter of law, cannot invalidate a judgment entered by a federal court of competent jurisdiction, and (2) by its clear and unambiguous language, the 1980 Release, as a matter of contract law, cannot void the 1964 judgment.
 
 
 9
 Haynes files a timely appeal, in which he argues that giving res judicata effect to the 1964 judgment is unfair and that the 1980 Release invalidates the 1964 judgment.
 
 II.
 
 10
 In reviewing a grant of summary judgment, an appellate court applies the same standard as the district court employs initially under Federal Rule of Civil Procedure 56(c). 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, Sec. 2716 (1983); Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). "[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The Supreme Court stated in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).
 
 A.
 
 11
 In Westwood Chemical Co., Inc. v. Kulick, 656 F.2d 1224 (6th Cir.1981) this court spoke of the doctrine of res judicata in the following manner:
 
 
 12
 The purpose of res judicata is to promote the finality of judgments and thereby increase certainty, discourage multiple litigation, and conserve judicial resources. A final judgment on a claim is res judicata and bars relitigation between the same parties or their privies on the same claim. It bars relitigation on every issue actually litigated or which could have been raised with respect to that claim. To constitute a bar, there must be an identity ... of the facts creating the right of action and of the evidence necessary to sustain each action.
 
 
 13
 Id. at 1227 (citations omitted).
 
 
 14
 The analysis of res judicata application begins with a determination of the preclusive effect of consent judgments. "[C]onsent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented.... [P]reclusion may extend to claims that were not even formally presented." 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Sec. 4443, at 385-87 (1981). In the 1964 action, no issues were actually litigated. Thus, if res judicata applies, it must apply on principles of claim preclusion.
 
 
 15
 This court has recognized the res judicata effect of consent judgments. In Schlegel Manufacturing Co. v. USM Corp., 525 F.2d 775 (6th Cir.1975), cert. denied, 425 U.S. 912 (1976), this court held that a consent decree, which recited that the plaintiff's patent was valid and that it was infringed by defendant, was entitled to res judicata effect and that the defendant was properly precluded from collaterally attacking the consent decree, which had clear and enforceable infringement provisions. Even though the degree of judicial involvement is different between a consent decree and a litigated result, the difference is not so consequential as to justify different res judicata treatment. Id. at 780. A strong public interest in achieving finality in litigation is advanced by giving res judicata effect to consent decrees. Vulcan, Inc. v. Fordees Corp., 658 F.2d 1106, 1111 (6th Cir.1981), cert. denied, 456 U.S. 906 (1982). The fact that this suit was filed in Tennessee rather than New York is irrelevant. Res judicata has been applied by one federal district court to preclude litigation of issues previously determined by another federal district court. Westwood Chemical, 656 F.2d at 1227.
 
 
 16
 In the instant case, HGI seeks to enjoin the same defendant--Haynes--from using the same name that resulted in substantially the same lawsuit in 1964.[3] That lawsuit resulted in a consent judgment enjoining Haynes from using the word "Harlem" in connection with a basketball team. Under the facts of this case, we hold that the district court could properly give the consent judgment res judicata effect.
 
 
 17
 Haynes argues, however, that offensive use of res judicata in this case would be unfair because it would deprive him of the opportunity to plead the 1980 Release as an affirmative defense. Offensive application of res judicata, as in the present case, may be treated differently than defensive application of the doctrine. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31 (1979).[4]
 
 
 18
 This argument fails for two reasons. First, the Supreme Court's reasoning in Parklane concerns unfairness that may result with a plaintiff who was not a party to a prior litigation has incentive to await a judgment against a defendant and then file suit claiming res judicata effect of the earlier judgment. That concern does not arise here because of the mutuality of parties and claims in the two litigations. "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, ... the application of offensive estoppel would be unfair to a defendant a trial judge should not allow use of offensive collateral estoppel." Id. at 331. The offensive use of res judicata in this case is consistent with this general rule. Secondly, Haynes was not denied the opportunity to argue that the 1980 Release voids the 1964 judgment. Haynes did raise the issue below but the district court rejected the argument.
 
 
 19
 Haynes also argues that, to promote judicial economy, he should have been given the opportunity to show changed circumstances justifying modification of the 1964 injunction as a defense to HGI's claims. While it is true that a court has the power to modify a final injunction based on changed circumstances leading to a grievous wrong, see United States v. Swift & Co., 286 U.S. 106, 119 (1932), a party cannot seek modification of an injunction by disobeying it and raising changed circumstances as a defense. See Polo Fashions v. Stock Buyers Intl'l., 760 F.2d 698, 700 (6th Cir.1985) (once injunction is entered, defendant is bound to obey it), cert. denied, 107 S.Ct. 2480 (1987). Accordingly, we find this argument to be meritless.
 
 B.
 
 20
 In attempting to create a genuine issue of fact, Haynes claims that his understanding of the 1980 Release nullified the effect of the 1964 judgment. Even assuming that the 1980 Release could, as a matter of law supersede or nullify the 1964 judgment, the express terms of the 1980 Release clearly do not.
 
 
 21
 The 1980 Release addresses Haynes's post-1964 employment relationship with the Harlem Globetrotters, releasing Haynes from any demands or claims which could have been made as of September 17, 1980. Language in the 1980 Release does not preclude HGI from relying on the 1964 judgment.
 
 
 22
 First, the recent claim did not arise until several years after the execution of the 1980 Release. The present claims do not fall within the scope of the language found in Paragraph 3 of the 1980 Release which states:
 
 
 23
 3. Haynes and HGI ... agree that the above constitutes full and complete ... release from any and all demands and claims made ... or which could have been made ... as of the date hereof, by Haynes against HGI ... and/or by HGI ... against Haynes, based on any state of fact or cause or causes of action, now existing, whether under contract, tort or any other legal doctrine, whether or not now known to them, including, but not limited to, claims which were or could have been made in any proceeding in any court ... relating to Haynes' employment agreements or relationship or any other matter arising out of his employment or relationship with HGI or its predecessor and/or termination thereof....
 
 
 24
 1980 Release at 3. (emphasis added).
 
 
 25
 The trademark claims alleged in the present case did not arise until after the 1980 Release was executed and are unrelated to the contractual and labor claims addressed by the 1980 Release.
 
 
 26
 Haynes also argues that language found in paragraph 14 of the 1980 Release relating to agreements and contracts invalidates the prior judgment. Paragraph 14 of the 1980 Release provides:
 
 
 27
 14. This Agreement constitutes the full understanding between [HGI] and Haynes, and except as explicitly provided for herein, supersedes and renders null and void any and all prior contracts, agreements, promises and understandings between them, whether written, verbal, explicit or implied.
 
 
 28
 1980 Release at 8; App. at 282 (emphasis added).
 
 
 29
 If the 1964 judgment is considered an agreement, promise or understanding as Haynes suggests, then HGI's foundation collapses and partial summary judgment should be denied. However, the Supreme Court has expressly rejected the argument that a decree upon consent is to be treated as a contract and not as a judicial act. Swift, 286 U.S. at 115. A consent decree is entered by the court which has received it, signed it, and ordered it as final judgment See Schlegel, 525 F.2d at 783.
 
 
 30
 Finally, reference to Haynes's intent is irrelevant. Under New York law[5] when language in a release is both clear and unambiguous, no factual inquiry concerning the parties' intent is necessary. See e.g., Locafrance U.S. Co. v. Intermodal Systems Leasing, Inc., 558 F.2d 1113, 1115 (2d Cir.1977); Bethlehem Steel Co. v. Turner Construction Co., 2 N.Y.2d 456, 460, 141 N.E.2d 590, 592 (1957).
 
 
 31
 The express language of the 1980 Release does not relieve Haynes from the effects of the 1964 judgment, insomuch as the language does not specifically mention invalidating prior judgments. The district court properly determined the Haynes's understanding of the 1980 Release did not create a genuine issue of fact. The clear and unambiguous terms found in the 1980 Release are limited to those matters concerning employment alone and do not release the obligations created by the 1964 consent judgment.
 
 
 32
 For the foregoing reasons, we AFFIRM the district court order granting partial summary judgment.
 
 
 
 [1]
 Defendants Harlem Magicians, Lon Varnell and Varnell Enterprises are not parties to this appeal
 
 
 [2]
 HGI, a division of International Broadcasting Corporation, purchased the Harlem Globetrotters and acquired the trademarks at issue along with all other rights and interests
 
 
 [3]
 HGI, as purchasers of the team and all of its rights and interests, are in privity with the plaintiff in the 1964 action, Abe Saperstein, satisfying the res judicata requirement of identity of parties. See Harrison v. Bloomfield Bldg. Industries, Inc., 435 F.2d 1192, 1195 (6th Cir.1970)
 
 
 [4]
 The Supreme Court identified several reasons why offensive use should be treated differently:
 (1) Incentive for plaintiff to adopt a "wait and see" attitude in hopes that first action by another plaintiff will result in a favorable judgment;
 (2) If in the first action defendant is sued for small damages, he may defend less vigorously if future suits are unforceable;
 (3) If the judgment relied upon as the basis for res judicata is inconsistent with previous judgments favoring the defendant;
 (4) If the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.
 Parklane, 439 U.S. at 329-31.
 
 
 [5]
 Paragraph 11 of the 1980 Release states that the 1980 Release shall be governed by New York law. 1980 Release at 7